JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John Doe

**DEFENDANTS**
The Trustees of St. Mary's College of Maryland

**(b)** County of Residence of First Listed Plaintiff **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bryan Tuk, Esq.
Tuk Law Offices
PO Box 639, Kennett Square, PA 19348

Attorneys *(If Known)*
Alison S. Boyle, JD, MPH
Assistant Attorney General
200 St. Paul Place, 17th floor
Baltimore, Maryland 21202-2021

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | / ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 USC s. 1681, et seq.
Brief description of cause:
This is a challenge to the legality of discipline imposed by a public college

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ in excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____
DOCKET NUMBER _____

DATE
August 15, 2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JOHN DOE,

             CIVIL ACTION NO.

  **Plaintiff**

    **v.**          **JURY TRIAL DEMANDED**

**THE TRUSTEES OF ST. MARY'S
COLLEGE OF MARYLAND,**

   **Defendant**

<u>**VERIFIED COMPLAINT**</u>

   Plaintiff John Doe ("**Doe**" or "**Plaintiff**") files this Verified Complaint against Defendant

The Trustees of the St. Mary's College of Maryland (the "**College**" or "**Defendant**"), and in

support thereof alleges as follows:

    **I.**   <u>**NATURE OF THE ACTION**</u>

1.   The facts of this matter, and the actions of the Defendant in this matter, are evidence of

   administrative quasi-judicial system at a public college, so poorly conceived and illegally

   administered, and so grievously flawed that it rises to the level of a blatant, systemic  and

   actionable violation of the Plaintiff's civil rights.

2.   In early September 2017, Jane Roe, an undergraduate student at the College (hereinafter

   "**Jane Roe**" or "**Roe**") and the Plaintiff met at a party on campus.  At this point in time

   the Plaintiff has begun his third year of his undergraduate studies towards a bachelor's

degree from the College.

3.     Subsequent to that meeting in early September 2017, Roe and the Plaintiff went to the Plaintiff's apartment and engaged in intimate activities. Neither party was intoxicated. No one witnessed the encounter except the Plaintiff and Jane Roe.

4.     Jane Roe did not stay overnight with the Plaintiff, instead electing to leave and go to her own student housing.

5.     Subsequent to their first interaction, Roe and the Plaintiff texted on an ongoing, daily basis, as well as exchanged messages via Snapchat and other social media platforms.

6.     On the evening of September 30, 2017, Roe and the Plaintiff met at a party on the Defendant's campus.

7.     Neither party was intoxicated during their interactions on the evening of September 30, 2017.

8.     Roe left the party with the Plaintiff on the evening of September 30, 2017, and went to the Plaintiff's on campus housing.

9.     On the evening of September 30, 2017 and into the morning of October 1, 2017, Jane Roe and the Plaintiff engaged in intimate activities for a second time.  Consistent with the prior encounter, no one witnessed the encounter except the Plaintiff and Jane Roe.

10.    Consistent with the first encounter between the Plaintiff and Jane Roe, Roe did not stay the night at the Plaintiff's on campus apartment and left after the intimate encounter with the Plaintiff.

11.    Some four months later, on January 22, 2018, the Plaintiff was visited by a College Police

Officer, acting as agent for the Defendant, who hand delivered a document entitled *Notice*

*of Investigation*.  A true and correct copy of the Notice of Investigation, which has been

redacted to preserve the anonymity of Jane Roe and the Plaintiff, is attached hereto as

Exhibit A, and incorporated by reference as though set forth fully at length.

12.    The provision of the College's Policy Against Sexual Misconduct that the College had

charged the Plaintiff with violating is entitled *Non-Consensual Sexual Intercourse*

*(Rape)*.  The definition of this portion the Policy also includes incest and statutory rape.

13.    Prior to the College Police Officer's visit on January 22, 2018, the Plaintiff was

completely unaware of any complaint or any College administrative investigation

concerning him.

14.    Contained within the Notice of Investigation was a paragraph entitled "No Contact

Order".  The paragraph provides as follows:

> *"The College is issuing a no-contact order between you and [Jane Roe]*
> *as of today, January 22, 2017. It shall remain in effect until the*
> *investigation process has concluded, at which time you will be notified*
> *of the same.*
>
> *Under a No Contact Order both parties are prohibited from having any*
> *verbal or non-verbal contact or interaction with the other party: (1) in*
> *person, (2) via mail, telephone, or electronic means, including but not*
> *limited to text messages, email, social media or other electronic*
> *devices, or (3) contact through a third party.*
>
> *Any violation of this directive by either party could result in*
> *disciplinary action against the responsible individual. Violations should*
> *be reported to the Office of Public Safety (240-895-4911).*

> *The College considers No Contact Orders to be confidential and expects students to treat them as such. If a student is harmed due to another student's sharing or publicizing a No Contact Order (i.e., verbally, through social media), such an act may be considered retaliation under College policy and the responsible student may be subject to disciplinary action."* <u>Exhibit A</u>, at Paragraph 5.

15.  By issuing the No Contact Order, the College unilaterally restricted the Plaintiff's right of travel and association without any due process afforded to the Plaintiff.

16.  Prior to January 22, 2018, there was no communication from the College to the Plaintiff regarding and allegations or investigation, nor was their any hearing, nor any questioning of the Plaintiff whatsoever prior to the College's issuance of the No Contact Order.

17.  The Plaintiff was not privy to the existence of any factual hearing or any fact finding due process whatsoever prior to the visit from the College Police on January 22, 2018.

18.  Subsequent to the delivery of the Notice of Investigation and the issuance of the No Contact Order, the College began an internal Title IX investigation, led by the Defendant's Title IX coordinator, Michael Dunn.

19.  Mr. Dunn was joined by Michelle DiMenna, who works at The College as an Institutional Research Analyst II.

20.  The Plaintiff was interviewed twice by Mr. Dunn and Ms. DiMenna.  The first interview occurred on February 9, 2018 (the **"First Interview"**).   The second interview was conducted on February 26, 2018 (the **"Second Interview"**).

21.  At no point during the investigation was the Plaintiff allowed to cross examine or question his accuser, Jane Roe. Not only do the College's Procedures contain no mechanism for a trial, nor for an opportunity to face the Plaintiff's accuser, the No

Contact Order *expressly prohibited the Plaintiff from doing so*.

22.    The ultimate result of the College's investigation wrongly found the Plaintiff responsible for violating the Policy. By a letter dated May 11, 2018 (hereinafter the "**Sanctions Letter**"), Mr. Dunn, on the College's behalf, levied a sanction against the Plaintiff of a one year suspension from the College, with the ability to reapply with certain conditions, but with no guarantee that the Plaintiff's application would be granted or that he could return to complete his undergraduate degree at the College.

## II.    THE PARTIES

23.    The Plaintiff is an adult male individual who is a citizen of the Commonwealth of Pennsylvania. At all relevant times, the Plaintiff's permanent home residence is located in the Commonwealth of Pennsylvania, while he did temporarily board at the College, which is located in the State of Maryland.

24.    The Defendant is a public college organized under the laws of the State of Maryland, with an address at 47645 College Drive, St Mary City, Maryland, 20686. The College's Bylaws vest authority to govern the College in the Board of Trustees.

## III.    JURISDICTION AND VENUE

25.    For diversity jurisdiction purposes, the Plaintiff is a citizen of the Commonwealth of Pennsylvania and the College is a citizen of the State of Maryland.

26.    This Court has original diversity jurisdiction over this claim pursuant to 28 U.S.C.§ 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

27.    This Court also has original federal question jurisdiction under Title IX of the Education

Act Amendments of 1972, 20 U.S.C. § 1681, *et seq.,* Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* 42 U.S.C. § 1981, and 28 U.S.C. § 1331, and jurisdiction over related state common law claims under the principles of ancillary and/or pendant jurisdiction pursuant to 28 U.S.C. § 1367.

28. Venue is proper in the Eastern District of Pennsylvania pursuant to 12 U.S.C. § 139l(b)(2) because a substantial part of the events or omissions giving rise to John Doe's claims and injuries occurred in the Eastern District of Pennsylvania.

## IV.    FACTUAL BACKGROUND

29. The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

30. The lack of due process prejudiced the Plaintiff.

31. The Do Not Contact Order was issued without any interview, or questioning or investigation of the Plaintiff or any opportunity for the Plaintiff to defend himself against the accusations.

32. The College's Procedures require the Title IX Coordinator and the Investigator to be separate persons, but Michael Dunn disregarded that and served in the roles of Title IX Coordinator, investigator, and judge and jury in a clear violation of the College's Procedures.

33. The deadlines for Jane Roe to submit certain materials were extended twice without explanation.  Upon information and belief, the College went out of its way to favor Jane Roe in this way during the Investigation.

34. Because of other Title IX litigation matters reported in the press involving the Defendant,

the Plaintiff believes and avers that the Defendant is under significant external pressure with respect to the way it investigates and adjudicates alleged violations of its Policy.

35.     The College has published a written policy entitled the St. Mary's College of Maryland Policy Against Sexual Misconduct (hereinafter the "**Policy**"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit A.

36.     The College has published a written policy which creates the procedural framework for investigating claims of sexual misconduct, entitled *The St. Mary's College of Maryland Procedures to Resolve Complaints of Sexual Misconduct against a Student* (hereinafter "**Procedures to Resolve Complaints**"), a true and correct copy of which is attached hereto and incorporated herein at Exhibit B.

37.     The College has published an Anti-Harassment Statement on its website, a true and correct copy of which is attached hereto and incorporated herein as Exhibit C (See http://www.smcm.edu/campus-rights/wp-content/uploads/sites/66/2017/12/171201-Anti-Harassment-Statement.pdf, viewed August 6, 2018).

38.     In the Sanction Letter, the College sets forth a quote from the Procedures to Resolve Complaints: According to the Procedures to Resolve Complaints of Sexual Misconduct Against Students (the "**Procedures**"), *"If the Responding Party is found responsible for a violation of the Policy, the Title IX Coordinator or Deputy will provide the Investigator(s) with the Parties' Impact Statements and a copy of the Responding Party's disciplinary history, which may be considered by the Investigator(s) in determining a sanction(s)."*

39.     Both parties submitted impact statements, which were provided to the parties on May 7, 2018.

40.     In the instant matter, the College fails to comply with its own Procedures excerpted in the Sanctions Letter.  According to the Procedures, the Title IX Coordinator or Deputy <u>will provide the Investigator(s)</u> with the Parties' Impact Statements and a copy of the Responding Party's disciplinary history.   This sentence, which almost certainly was crafted by the College's legal counsel, requires that the Title IX Coordinator and Investigator *be separate persons*.   In the matter before this Court, Michael Dunn served <u>both</u> roles.

41.     Mr. Dunn was and is the College's Title IX Coordinator, and was also the investigator on the matter involving the Plaintiff <u>and</u> was the person who evaluated the evidence and rendered a decision.  This is in blatant disregard of the College's own Procedures.

## COUNT I:
## Breach of Contract

42.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

43.     At all times relevant hereto, a contractual relationship existed between the College and the Plaintiff through the College's policies and procedures governing the Student Disciplinary System, including but not limited to the provisions of the Policy, the Procedures to Resolve Complaints and the Anti-Harassment Statement.

44.     The College, in its organizational documents that are communicated to its students, including the Plaintiff, makes express contractual commitments to students involved in College's disciplinary processes.

45.     Specifically, the College promises students, "*St. Mary's College of Maryland is fully*

committed to equal employment and educational opportunities for its employees and students. The College does not discriminate or condone discrimination or harassment in the workplace or academic setting, on the basis of race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law." Exhibit B, at Section IV, p. 9.

46. Specifically, the College promises students, "*[t]hese Procedures to Resolve Complaints of Sexual Misconduct against a Student (Student Procedures) provide a process for the prompt **and equitable** investigation and adjudication of complaints of sexual and gender-based discrimination, sexual and gender-based harassment, sexual assault, relationship violence and stalking (collectively referred to as Sexual Misconduct) against a student enrolled at St. Mary's College of Maryland (the College).*" Exhibit B at 1 (emphasis added).

47. In its Anti-Harassment Statement published on its website, the College promises to "***not tolerate harassment or** discrimination of any kind, including harassment or **discrimination based on sex, gender**, gender identity, gender expression, or sexual orientation.*"  A true and correct copy of the Anti Harassment Statement is attached hereto as Exhibit C, paragraph 1 (emphasis added). (Anti-Harassment Statement published at http://www.smcm.edu/tothepoint/wp-content/uploads/sites/71/2015/08/anti-harassment-statement.pdf, last viewed August 6, 2018).

48. The College, through its investigators, was required to act in accordance with the terms of the Policy and the Procedures to Resolve Complaints and Anti-Harassment Statement in addressing Jane Roe's allegations against the Plaintiff; in conducting its investigation; in

applying the provisions of the Policy, in making the decision whether to file charges against the Plaintiff; in adjudicating the charges; and in deciding on sanctions.

49.    For all the above reasons, the College has materially breached its contracts with the Plaintiff by failing to provide *"a process that is fundamentally fair, and free of bias or prejudice,"* failing to give adequate notice, failing to perform a fair, thorough, and nondiscriminatory investigation, and failing to comply with its policies and procedures and Anti-Harassment Statement.

50.    In addition to the express contractual obligations between the College and the Plaintiff referred to throughout this Complaint, there is an implied duty of good faith and fair dealing in the contracts between the College and the Plaintiff, which was violated repeatedly as a result of the acts and omissions described herein.

51.    As a direct, proximate and foreseeable consequence of the College's numerous material breaches of contract, the Plaintiff has suffered monetary damages and other direct and consequential damages.

52.    The Plaintiff is entitled to recover damages for the College's breach of its contractual obligations and duties.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

**COUNT II:**

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.**

53.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

54.     Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681- 1688, provides in pertinent part that "*[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*" 20 U.S.C. § 1681(a).

55.     Title IX applies to all public and private educational institutions that receive federal funds, including colleges and universities. The College is a recipient of federal funds and, therefore, is bound by Title IX and its regulations.

56.      Title IX is enforceable through an implied right of action affording an individual discriminated against on the basis of his or her gender monetary damages and equitable relief.

57.      Under Title IX, schools must "*[a]dopt and publish grievance procedures providing for the **prompt and equitable resolution of student** . . . **complaints** alleging any action which would be prohibited by [Title IX or its regulations].*" 34 C.F.R. § 106.8(b) (emphasis added). Both the Department of Education and US Department of Justice have set forth this requirement by way of regulation. *See* 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).

58.      In 2001, the Office for Civil Rights ("**OCR**") of the Department of Education, the office that administratively enforces Title IX, promulgated regulations pursuant to notice-and comment

rulemaking in a document entitled *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (the "**2001 Guidance**"). Available at https://www2.ed.gov/offices/OC R/archives/pdf/shguide.pdf (last viewed August 6, 2018). In addition, the OCR also issued a Dear Colleague Letter on September 27, 2017 (the "**2017 DCL**"). In addition, the OCR issued a document entitled "Q&A on Campus Sexual Misconduct" (the "**2017 Q&A**"), published at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf, last viewed August 6, 2018).

59.     Title IX's regulations, including the 2001 Guidance and 2017 DCL and 2017 Q&A, have the force and effect of law, because they affect individual rights and obligations and were the product of notice-and-comment rulemaking. The 2017 DCL and 2017 Q&A allow Colleges and Universities to adopt a tougher "clear and convincing" standard in determining a student's guilt or innocence, rather than the less stringent "clear and convincing" standard, which the OCR notes favors the accuser. 2017 Q&A at fn 19. The OCR also no longer discourages cross-examination of witnesses. Id., at p.5.

60.     OCR's 2001 Guidance "identified a number of elements in evaluating whether a school's grievance procedures are prompt and equitable...." *Id.* at 20. These elements apply to private and public colleges and universities and include: "Notice to students ... of the [school's] procedure" ***"Adequate, reliable, and impartial investigation of complaints,*** including the ***opportunity to present witnesses and other evidence"*** *Id.* (emphasis added).

61.     OCR's 2001 Guidance further stated that "according due process to both parties *involved, will lead to sound and supportable decisions." Id.* at 22 (emphasis added).

62.     Title IX bars the imposition of university discipline where gender is a motivating factor.

63.     Both on their face and as applied in this case, the College's Policy Against Sexual Misconduct and the Procedures to Resolve Complaints violate Title IX. The violations include, but are not limited to, engaging in selective enforcement and reaching an erroneous outcome.

64.     Throughout the disciplinary process, the College treated the Plaintiff unfairly because of his sex, including, among other things, by failing to give the Plaintiff basic due process protections such as the right to confront his accuser, to receive copies of relevant evidence, and to present witnesses and other evidence on his own behalf; and by conducting an inadequate, unreliable, and biased investigation of the complaint against him.

65.     The investigative team's one-sided investigation demonstrated pervasive gender bias against the Plaintiff and in favor of Jane Roe.

66.     Upon information and belief, statistics within the exclusive possession and control of the College will show a pattern of intentional discriminatory conduct and selective enforcement.

67.     The College's institutionalized gender bias against males accused of sexual assault results from classifications based on archaic assumptions. The College treats female complainants differently than male respondents based on the College's outdated attitudes about females and overbroad generalizations about male and female sexual traits and behaviors.

68.     The outcome of the College's grievously flawed proceeding against the Plaintiff was clearly erroneous, and was motivated on the basis of sex. The College was on notice of, and was deliberately indifferent to, the serious flaws in the investigation, the lack of equity and fairness, and the gender bias that is infused in the investigation and adjudication process. The implementation of the Procedures was motivated by and premised on archaic assumptions and stereotypical notions of the sexual behavior of male and female students- i.e., male students are

perceived as sexual aggressors and perpetrators and female students are perceived as sexual victims.

69.     The College's conduct was so severe, pervasive, and objectively offensive that it denied the Plaintiff equal access to education that Title IX is designed to protect.

70.     The College has punished the Plaintiff with one of its most severe sanctions available - a one year suspension going into his senior undergraduate year with no guarantee of re-admission and a permanent record of the alleged violation - with little evidence and as a result of a process that contains virtually no procedural safeguards for accused students and is permeated with gender bias.

71.     The College has effectively expelled the Plaintiff from the College based on the unsubstantiated, uncorroborated allegation of Jane Roe, a single College student.

72.     As a direct, proximate, and foreseeable consequence of the College's aforementioned Title IX violations, the Plaintiff has sustained and will continue to sustain significant damages, including, but not limited to, severe emotional distress, damages to physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

73.     As a result of the foregoing, the Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT III:
## Negligence

74.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

75.     The College owes duties of care to the Plaintiff independent of its contractual duties, including, without limitation, a duty of reasonable care in selecting, training and supervising investigators to implement the Procedures to Resolve Complaints.

76.     The College breached its duties of care owed to the Plaintiff by failing adequately to select, train and supervise the investigative team and thereby allowing it to conduct a deeply flawed investigation, discriminate against John based on gender stereotypes, produce flawed and biased Reports, and reach unwarranted and erroneous conclusions.

77.     As a direct, proximate, and foreseeable consequence of the College's negligence, the Plaintiff has sustained and will continue to sustain significant damages, including, but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT IV:
### Intentional Infliction of Emotional Distress

78.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

79.     The acts and omissions of the College and its investigators were willful and intentional.

80.     The College knew or should have known that the investigators' systematically improper acts and omissions set forth above would cause the Plaintiff severe emotional distress.

81.     The College's conduct and that of the investigators was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

82.     The College's conduct and that of the investigators was the direct and proximate cause of the Plaintiff's severe emotional distress, which includes symptoms of depression, extreme anxiety, loss of the ability to concentrate, intense feelings of hopelessness and sadness, and the inability to sleep through the night.

83.     As a direct, proximate, and foreseeable consequence of the aforementioned conduct, the Plaintiff has sustained significant damages, including but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, and other direct and consequential damages.

    **WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT V:
### Negligent Infliction of Emotional Distress

84.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

85.     The acts and omissions of the College and its investigators were negligent.

86.     The College knew or should have known that the investigators' systematically improper acts and omissions set forth above would cause the Plaintiff severe emotional distress.

87.     The College's conduct and that of the investigators was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

88.     The College's conduct and that of the investigators was the direct and proximate cause of the Plaintiff's severe emotional distress, which includes symptoms of depression, extreme anxiety, loss of the ability to concentrate, intense feelings of hopelessness and sadness, and the inability to sleep through the night.

89.     As a direct, proximate, and foreseeable consequence of the aforementioned conduct, the Plaintiff sustained significant damages, including but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, and other direct and consequential damages.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

**COUNT VI:**
**Unfair Trade Practices and Consumer Protection Law,**
**73 Pa. C.S. § 201-1, *et seq.***

90.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

91.     At all relevant times, the College offered for sale to the public educational goods and services.

92.     At all relevant times, the Plaintiff was a purchaser of educational goods or services for personal, family or household purposes.

93.     In connection with the sale of its educational goods and services and collection of tuition, fees and costs related thereto, the College committed various unfair and deceptive acts and practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. § 201-1, *et seq.* ("UTPCPL"), including, but not limited to the following acts, omissions, warranties, and misrepresentations:

94.     Representing to the Plaintiff that: "St. Mary's College of Maryland is fully committed to equal employment and educational opportunities for its employees and students. The College does not discriminate or condone discrimination or harassment in the workplace or academic setting, on the basis of race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law." Exhibit A, at Section IV, p. 9.

95.     Representing to the Plaintiff that: "*[t]hese Procedures to Resolve Complaints of Sexual Misconduct against a Student (Student Procedures) provide a process for the prompt **and equitable** investigation and adjudication of complaints of sexual and gender-based discrimination, sexual and gender-based harassment, sexual assault, relationship violence and stalking (collectively referred to as Sexual Misconduct) against a student enrolled at St. Mary's College of Maryland (the College).*" <u>Exhibit B</u> at 1 (emphasis added).

96.     Representing to the Plaintiff that the College will "*not tolerate harassment or discrimination of any kind, including harassment or **discrimination based on sex, gender, gender identity, gender expression, or sexual orientation**.*"     See, <u>Exhibit C</u>, paragraph 1 (emphasis added).

97.     Representing to the Plaintiff that he would not be discriminated against, treated unequally compared to female students, or mistreated as a result of his male gender, when in fact the College would and did do so.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for the following relief:

(a)     Find, determine and declare that the College's business practices violate the UTPCPL;

(b)     Award actual and statutory damages, including restitution, treble damages, attorney fees and costs;

(c)     Grant any other appropriate relief.

## COUNT VII:
### Violation of 42 U.S.C. § 1983
### 14th Amendment

98.     The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

99.     42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

100.    As described more fully above, the agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair hearing.

101.    The Defendant employees' and agents' misconduct also directly resulted in the unjust finding of responsibility for violation of the College's Sexual Misconduct Policy, thereby denying him his constitutional right to a fair hearing, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    As a result of this violation of his constitutional right to a fair hearing, his constitutional right of freedom of association, and his constitutional right to cross examine and question his accuser, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

103.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

**COUNT VIII:**
**Violation of 42 U.S.C. § 1983**
**1st Amendment**

104.    The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

105.    The agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff his First Amendment rights of freedom of association by unilaterally imposing a No Contact Order without any due process whatsoever to Plaintiff.

106.    The University's violations of 42 U.S.C. § 1983 were the actual, direct, and proximate cause of injuries suffered by the Plaintiff as alleged.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## COUNT IX:
## Violation of 42 U.S.C. § 1983
## 6th Amendment

107. The Plaintiff incorporates each of the paragraphs in this Complaint as if fully set forth herein at length.

108. The agents and employees of the College, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff his Sixth Amendment rights to confront and cross examine his accuser.

109. The University's violations of 42 U.S.C. § 1983 were the actual, direct, and proximate cause of injuries suffered by the Plaintiff as alleged.

**WHEREFORE**, the Plaintiff demands that judgment be entered in his favor and against the College for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in addition to prejudgment interest, attorney's fees, expenses, costs and any other appropriate relief.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff John Doe respectfully requests that this Honorable Court:

1. Immediately enjoin the College from continuing to impose the disciplinary process against the Plaintiff;

2. Allow Plaintiff to return to campus to finish his fourth and final year of his undergraduate program at the College as a member in good standing of the College Community;

3. Order the College to set aside the investigative team's finding that the Plaintiff is responsible for violating the College's Sexual Misconduct Policy and the sanctions of suspension and any related notation on his academic records;

4. Require the College, if it wishes to proceed with a disciplinary process, to appoint

a new, independent investigator from outside the College to determine whether there is sufficient basis to conduct a full investigation and, if so, to conduct a fair and complete investigation, including addressing the issues raised by the Plaintiff in this Complaint;

5. Require the College to change the Disciplinary Procedures to be consistent with due process;

6. Award the Plaintiff compensatory damages in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of education and professional opportunities, loss of future career prospects, and other direct and consequential damages;

7. Award prejudgment interest;

8. Award attorney fees and costs pursuant to statutory or common law doctrines providing for such award;

9. Grant such other and further relief that the Court deems just and proper.

## Demand for Jury Trial

John Doe respectfully requests and demands a jury trial on all issues so triable.

Date August 13, 2018                                Respectfully Submitted,

BY: _____
                                                J. Bryan Tuk, Esq.
                                                Attorney ID 85718
                                                bryan@tuklaw.com
                                                Tuk Law Offices
                                                PO Box 638
                                                Kennett Square, PA 19348
                                                (610) 393-6763

                                                *Attorney for Plaintiff*

## **VERIFICATION**

I, John Doe, verify that I have read the foregoing Complaint and verify that all of the facts set forth therein are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _8/7/2018_

_John Doe_

John Doe

# Exhibit A

St. Mary's College of Maryland
Policy Against Sexual Misconduct

## St. Mary's College of Maryland
## Sexual Misconduct Resource Page

**How to Get Help:**

Any member of the College community who has experienced sexual misconduct is urged to immediately seek medical assistance and/or notify the police.

| Emergency Response | Health & Safety | Confidential Resources |
|---|---|---|
| **SMCM Public Safety** (240) 895-4911, or x4911 from any campus phone<br><br>**St. Mary's County Sheriff's Office** Emergency: 911<br>For concerning situations: (301) 475-4200 x1900<br><br>**Maryland State Police** Leonardtown Barracks (301) 475-8955 | **St. Mary's Hospital** (301) 475-8981<br>Provides medical treatment and Sexual Assault Forensic Exams.<br><br>**Calvert Memorial Hospital** (410) 535-4000<br>Provides medical treatment and Sexual Assault Forensic Exams.<br><br>**SMCM Health Services** (240) 895-4289<br>Provides medical treatment.<br>Monday through Friday, 8:00 a.m. – 5:00 p.m. | **SMCM Staff Therapist/Advocate** (240) 895-4289<br>Available through Counseling Services. Provides referrals, support and advocacy.<br><br>**Walden-Sierra, Inc.**<br>**Crisis Hotline** (301) 863-6661<br>Provides advocacy, accompaniment to the hospital, crisis counseling, or on-going therapeutic support.<br><br>**SMCM Counseling Services** (240) 895-4289<br>Provides confidential psychological counseling.<br><br>**SMCM Sexual Misconduct Advocacy and Resource Team (SMART)** (301) 904-2015<br>Provides advocacy, information regarding resources, accompaniment to the hospital, assistance with reporting options and prevention education, under the supervision of the staff therapist/advocate. |

Additional campus resources include:

**Title IX Coordinator: Michael Dunn**

titleix@smcm.edu, (240) 895-4105, Lucille Clifton House

The College has designated a Title IX Coordinator to oversee all reports of sexual and gender-based discrimination, sexual and gender-based harassment, sexual violence, stalking, and relationship violence. The Title IX Coordinator, an independent office that reports directly to the President, is supported by two Deputy Title IX Coordinators.

# St. Mary's College of Maryland
# Policy Against Sexual Misconduct

## Table of Contents

I.   Resources.................................................................................................................3
   a.   Confidential Resources (Counseling and Advocacy) ...................................4

   b.   Confidential Medical Resources ...................................................................5

   c.   Campus Resources ........................................................................................6

II.  The St. Mary's Way and Community Expectations.........................................8
III. Scope of Policy ...........................................................................................8
IV.  Non-Discrimination Policy .........................................................................9
V.   Privacy vs. Confidentiality ..........................................................................11
   a.   Privacy and Confidentiality ..........................................................................11

   b.   Responsible Employees ................................................................................11

   c.   Reporting Party's Request for Privacy ..........................................................12

   d.   Timely Warning and Other Considerations ..................................................12

VI.  Prohibited Conduct and Definitions ...........................................................13
   a.   Prohibited Forms of Conduct.......................................................................13

   b.   Other Definitions .........................................................................................16

VII. Reporting ...................................................................................................18
   a.   Emergency and External Reporting Options.................................................18

   b.   Reporting Considerations: Timeliness and Location of Incident...................19

   c.   Amnesty for Alcohol or Other Drug Use ......................................................19

   d.   Coordination with Law Enforcement ...........................................................19

   e.   Statement Against Retaliation .....................................................................20

   f.   False Reports ................................................................................................20

VIII. Interim Measures, Remedies and Accommodations....................................20
   a.   Overview ......................................................................................................20

   b.   Range of Measures .......................................................................................21

   c.   Interim Suspension ......................................................................................21

IX.  Options for Resolution................................................................................22
   a.   Time Frame for Resolution ...........................................................................22

X.   Education and Prevention Programs ...........................................................22
XI.  Agreements with Local Law Enforcement and Rape Crisis Programs ...........22
XII. Campus Sexual Assault Climate Survey .......................................................23
XIII. Conflicts with Other Policies......................................................................23

# St. Mary's College of Maryland
# Policy Against Sexual Misconduct

*Applies to sexual and gender-based discrimination, sexual and gender-based harassment, sexual violence, stalking, and relationship violence ("sexual misconduct")*

## I.  Resources

St. Mary's College of Maryland (hereafter referred to as either "the College" or "SMCM") is committed to treating all members of the community with dignity, care, and respect. Any individual who experiences or is affected by sexual or gender-based discrimination, sexual or gender-based harassment, sexual violence, stalking, or relationship violence (hereafter referred to as "sexual misconduct"), whether as a Reporting Party, a Responding Party, or a third party, will have equal access to support and counseling services through the College. Interim remedies are also available to all parties (see Section VIII).

The College recognizes that the decision whether or not to make a report, either to the College or law enforcement, and choosing how to proceed, can be difficult. Making a report means telling someone in authority what happened, in person, by telephone, in writing or by email. Regardless of whether the decision has been made to report an incident, all individuals are encouraged to seek the support of on- and off-campus resources. These trained professionals can provide guidance in making decisions, information about available resources and procedural options, and assistance to either party in the event that a report and/or resolution under this policy is pursued. Individuals are encouraged to use all available resources on- and off-campus, regardless of when or where the incident occurred.

There are many resources available on campus and in the surrounding community. As detailed below, there are Confidential Resources:  By law, trained professionals who serve in a counseling or medical context cannot share information without the consent of the individual seeking assistance. There are also a variety of College resources that will be discreet and private, but are not considered confidential. Information shared with College resources outside of counseling or medical services will be shared with the Title IX Coordinator to ensure a consistent administrative response, appropriate support and protection for a Reporting Party, and a prompt and equitable resolution. All College resources will maintain the privacy of an individual's information within the limited circle of those involved in the resolution of a complaint under this Policy. For more information about the difference between privacy and confidentiality, see Section V.

The College has designated a Title IX Coordinator to oversee all reports of sexual misconduct.  The Title IX Coordinator, an independent office that reports directly to the President, is supported by two Deputy Title IX Coordinators.

Title IX Coordinator:
Michael Dunn
Lucille Clifton House * (240) 895-4105
titleix@smcm.edu, mkdunn@smcm.edu

Deputy Title IX Coordinators:
Kyle Bishop                                          Shannon Jarboe
Calvert Hall 220 * (240) 895-3181                    Glendening Hall 170 * (240) 895-4309
titleix@smcm.edu, kkbishop@smcm.edu                  titleix@smcm.edu, skjarboe@smcm.edu

### a. Confidential Resources (Counseling and Advocacy)

The College encourages all community members to make a prompt report of any incident of sexual misconduct to local law enforcement and to the College. For individuals who are not prepared to make a report to the College, who may be unsure what happened, or who are seeking information and support, there are several legally protected confidential resources available as designated below. These confidential resources will not share information with the College or anyone else without the individual's permission. Information shared with these confidential resources is not considered a report to the College.

#### i. On-Campus Confidential Resources (Counseling and Advocacy)

- **Staff Therapist/Advocate: Kelly Muldoon, kmmuldoon1@smcm.edu, (240) 895-4289**
  The staff therapist/advocate is available through Counseling Services (240-895-4289). This staff member can provide students with referrals, support, and advocacy during the investigation and adjudication of allegations of sexual misconduct. The staff therapist/advocate works with the Title IX Coordinator to provide sexual misconduct prevention education.

- **Counseling Services: (240) 895-4289**
  Counseling Services has professionally trained clinicians to offer advocacy, support, therapy, and guidance. Counselors are available to provide advocacy to students and connect them to other resources on and off campus. Any names and information shared with a counselor will not be shared with any other campus office/personnel except when there is an immediate danger to self or others or a suspicion of child abuse.

- **SMCM Sexual Misconduct Advocacy and Resource Team (SMART): (301) 904-2015**
  Available 24/7 via phone or text message while students are on campus
  SMART is a group of students specially trained in sexual misconduct crisis response protocols who provide on-call services 24 hours a day, 7 days a week when school is in session. SMART can assist with reporting options, advocacy, on- and off-campus resources, accompaniment to the hospital, and prevention education. Members of SMART are confidential resources under the supervision of the staff therapist/advocate, who is also a confidential resource. All reports to SMART will be shared with the staff therapist/advocate. Neither SMART members nor the staff therapist/advocate will share information with the College or anyone else without the individual's permission, except when there is an immediate danger to self or others or a suspicion of child abuse. Information shared with SMART is not considered a report to the College. Students may also elect to remain anonymous by not sharing personally identifiable information about themselves or other involved parties with the SMART.

#### ii. Off-Campus Confidential Resources (Counseling and Advocacy):

- **Walden-Sierra, Inc.: (301) 863-6661 (24-hour hotline) (888) 912-7366**
  The Walden-Sierra 24-hour crisis hotline can be contacted day or night. Walden Sierra can provide advocacy, accompaniment to the hospital, crisis counseling, or on-going therapeutic support. Walden

Sierra is under no obligation to notify the College or local authorities when providing services to students. http://www.waldensierra.org/

- **Maryland Coalition Against Sexual Assault (MCASA): (410) 974-4507**
  The Maryland Coalition Against Sexual Assault can provide resources for survivors as well as legal services through the Sexual Assault Legal Institute (SALI). MCASA is under no obligation to notify the College when providing services to students. www.mcasa.org

- **The Southern Maryland Center for Family Advocacy: (301) 373-4141**
  The Southern Maryland Center for Family Advocacy can provide advocacy, resources, referral, and legal assistance to victims of relationship violence. The Center is under no obligation to notify the College when providing services to students. www.smcfa.net

- **Rape, Abuse and Incest National Network (RAINN): (800) 656-4673**
  A confidential, anonymous national sexual assault hotline. www.rainn.org

### b. Confidential Medical Resources

A medical provider can provide emergency and/or follow-up medical services. The medical exam has two goals: first, to diagnose and treat the full extent of any injury or physical effect (including prevention of sexually transmitted infections and pregnancy) and second, to properly collect and preserve evidence. The College is not notified by the hospital unless the Reporting Party desires to have on-campus personnel notified.

St. Mary's Hospital and Calvert Memorial Hospital provide Sexual Assault Forensic Exams. All costs of these exams are free to the Reporting Party and the exams are performed by trained Sexual Assault Nurse Examiners. There is a limited window of time (within 96 hours) following an incident of sexual assault to preserve physical and other forms of evidence. Taking the step to gather evidence immediately does not commit an individual to any particular course of action. The police will not be contacted by the hospital unless the Reporting Party so desires. The decision to seek timely medical attention and gather any evidence, however, will preserve the full range of options to seek resolution under this policy or through the pursuit of criminal prosecution.

If a SAFE exam is desired, it is ideal if the Reporting Party does not shower, use the bathroom, or clean one's body in any way. The individual should also preserve any clothing (including undergarments) in a paper bag to bring to the hospital. SAFE exams are maintained anonymously at the hospital for a minimum of 90 days.

### i. On-Campus Confidential Resources (Medical):

- **Health Services: (240) 895-4289**
  Health Services professionals provide medical attention and referrals to campus and community resources. While Health Services does not provide a SAFE exam, they do provide some testing for sexually transmitted infections, pregnancy testing, Plan B emergency contraception, and treatment for minor injuries. Any names and information shared with a member of the Health Services staff will not be shared with any other campus office/personnel except when there is an immediate danger to self or others or a suspicion of child abuse.

- **St. Mary's Hospital: (301) 475-8981**
  234 Jefferson Street, Leonardtown, MD 20650

- **Calvert Memorial Hospital: (410) 535-4000**
  100 Hospital Road, Prince Frederick, MD 20678

The College will fully and promptly cooperate in obtaining appropriate medical attention for a Reporting Party, including transportation for the Reporting Party to St. Mary's Hospital.

c.   **Campus Resources**

In addition to the confidential resources listed above, SMCM community members have access to a variety of resources provided by the College. The staff members listed below are trained to support individuals affected by sexual harassment or misconduct and to coordinate with the Title IX Coordinator consistent with the College's commitment to a safe and healthy educational environment. While not bound by confidentiality, these resources will maintain the privacy of an individual's information within the limited circle of those involved in the Title IX resolution process.

- **Title IX Coordinator: Michael Dunn**
  **(240) 895-4309, Lucille Clifton House**
  The Title IX Coordinator oversees the College's response to a report of sexual misconduct.  The Coordinator is responsible for the initial Title IX assessment, implementing interim remedies and protective measures for the individual and the community, initiating the investigation, and ensuring a fair and impartial resolution designed to stop the harassing conduct, address its effects, and prevent its recurrence. The Coordinator provides oversight of all Title IX complaints to ensure compliance with local, state and federal authority, and receives, reviews and maintains records of all complaints to identify and address any systemic problems. The Coordinator also assesses student activities periodically to ensure that the practices and behaviors of the students do not violate the policies on sexual harassment and violence, and to tailor education, prevention, and training programs regarding sexual misconduct to the needs of the community.  The Coordinator is available to meet with students, staff and faculty.

- **Deputy Title IX Coordinator: Kyle Bishop**
  **(240) 895-3181, Calvert Hall 220**

- **Deputy Title IX Coordinator: Shannon Jarboe**
  **(240) 895-4309, Glendening Hall 170**

  While the Title IX Coordinator has oversight over all complaints, the Deputy Title IX Coordinators serve as a valuable additional resource within the employee context to address complaints against staff, faculty, and third parties.  The Deputy Title IX Coordinators can serve as a reporting option, provide information as to resources and procedural options, be available to meet with Reporting Parties and Responding Parties, and facilitate access to interim remedies and measures.  The Deputy Title IX Coordinators can also assist in assessing climate in the employee context.

  The Title IX Coordinator and Deputy Title IX Coordinators are assisted by members of the Title IX

Team, denoted by an asterisk below. Members of this interdepartmental team include the Title IX Coordinators, the Student Conduct Officer and the Director of Public Safety. In addition, based on the role of the Reporting Party and the Responding Party, the members of the team could include the Vice President for Academic Affairs and Dean of Faculty, the Dean of Students and/or the Director of Human Resources. Composition of the team will be limited to a small circle of individuals who "need to know" in order to implement procedures under this policy.

- **Director, Office of Public Safety***
  Tressa Setlak, tasetlak@smcm.edu
  (240) 895-4911
  Available 24 hours a day/7 days a week/365 days a year
  Public Safety may assist with the on-campus investigation of a report and can assist with no-contact orders. Public Safety can contact the staff therapist/advocate or the Sexual Misconduct Advocacy and Resource Team (SMART) when an incident of sexual misconduct is reported with the Reporting Party's consent. Public Safety can assist with contacting the St. Mary's County Sheriff's Office if the Reporting Party requests a criminal investigation be initiated. If the Reporting Party does not wish for the Sheriff's Office to investigate, Public Safety officers will notify the Sheriff's Office of the incident and the fact the Reporting Party requests to remain anonymous.

- **Vice President for Student Affairs/Dean of Students***
  Leonard Brown, lebrown1@smcm.edu
  (240) 895-4208
  The Vice President of Student Affairs/Dean of Students ("Dean of Students") oversees Residence Life, Public Safety, and the Assistant Dean of Students. The Dean of Students can provide options and resources for students as well as assist with a variety of accommodations.

- **Assistant Dean of Students***
  Kyle Bishop, kkbishop@smcm.edu
  (240) 895-3181
  The Assistant Dean of Students oversees Counseling Services, Health Services, and the Office of Student Conduct. The Assistant Dean of Students can provide options and resources for students as well as assist with a variety of accommodations.

- **Office of Student Conduct**
  Leonard Brown, lebrown1@smcm.edu
  (240) 895-4208
  The Office of Student Conduct can connect students to on- and off-campus resources.

- **Office of Residence Life**
  (240) 895-4207
  Residence Life staff are trained to respond to all kinds of student emergencies and can quickly connect the Reporting Party to other resources on and off campus. Students involved in sexual misconduct incidents in a substantial capacity may request an immediate change of living situations, if an alternative is reasonably available, by contacting Residence Life (or Public Safety after-hours). The College also reserves the right to require alternative housing for the parties in certain circumstances.

- **Office of Student Support Services**
  (240) 895-4388
  Student Support Services can assist students in requesting accommodations for classes, rearranging schedules, connecting with faculty, or taking a leave of absence from the College (if possible). Information shared with Student Support Services will be shared with the staff therapist/advocate, Title IX Coordinator, student conduct officer, Public Safety, Dean of Students Office, and relevant administrators.

*Denotes member of the Title IX Team

## II.   The St. Mary's Way and Community Expectations

As stated in the St. Mary's Way, the College is a place *"where people foster relationships based upon mutual respect, honesty, integrity, and trust."* As such, the College is committed to providing an educational, living and working environment free from all forms of harassment and discrimination for all members of the community. This policy prohibits all forms of sexual or gender-based harassment, discrimination or misconduct, including sexual violence, sexual assault, stalking, and relationship violence. Misconduct of this nature is contrary to the St. Mary's Way and prohibited by state and federal law. This Policy has been developed to reaffirm the College's institutional values, to define community expectations, to provide for fair and equitable procedures for determining when this Policy has been violated and if so violated, to provide recourse for those individuals. Disciplinary sanctions for such violations may include suspension or expulsion for students and suspension or termination for employees.

All members of the SMCM community are expected to conduct themselves in a manner that does not infringe upon the rights of others. Moreover, all SMCM community members, including students, are strongly encouraged to report information regarding any incident of sexual misconduct directly to the Title IX Coordinator or a member of the Title IX team. The College cannot take appropriate action unless an incident of sexual misconduct is reported to the College.

The St. Mary's Way defines the College as a place *"where people contribute to a spirit of caring and an ethic of service."* With this in mind, the College encourages all members of our community to participate in the process of creating a safe, welcoming, and respectful environment on campus. In particular, the College expects that all SMCM community members will take reasonable and prudent actions to prevent or stop an act of sexual misconduct. Taking action may include direct intervention when safe to do so, enlisting the assistance of friends, contacting law enforcement, or seeking assistance from a person in authority. Community members who choose to take action will be supported by the College and protected from retaliation.

## III.   Scope of Policy

The College prohibits all forms of sexual and gender-based discrimination and harassment, including sexual harassment, sexual violence, stalking, and relationship violence. Sexual misconduct may occur between people of the same or different sexes, gender identities or expressions, or sexual orientations.

The College endeavors to foster a climate free from sexual misconduct through training, education, and prevention programs, and through policies and procedures that promote prompt reporting, prohibit retaliation, and ensure timely, fair, and impartial investigation and resolution of complaints in a way that

eliminates the sexual misconduct, prevents its recurrence, and addresses it effects. This Policy applies to all SMCM community members, including students, faculty, administrators, staff, volunteers, vendors, independent contractors, visitors and any individuals regularly or temporarily employed, studying, living, visiting, conducting business, or having any official capacity with the College or on College property. This Policy protects all members of the SMCM community.

This Policy is intended to protect and guide individuals who have been affected by sexual misconduct, whether as a Reporting Party, a Responding Party, or a third party, and to provide fair and equitable procedures for investigation and resolution of reports.

When used in this Policy, "Reporting Party" refers to the individual who identifies oneself as a victim or survivor of sexual or gender-based discrimination, sexual or gender-based harassment, sexual violence, stalking, or relationship violence. A "Responding Party" refers to the individual who has been accused of prohibited conduct under this Policy. A "Third Party" refers to any other participant in the process, including a witness to the incident or an individual who makes a report on behalf of someone else.

This Policy applies to conduct occurring on College property or at College-sanctioned events or programs that take place off campus, including study abroad and internship programs.  With respect to incidents in which both the Reporting Party and Responding Party are members of the College community, this Policy will apply regardless of the location of the incident.  In addition, off campus conduct by or against a member of the SMCM community that is likely to have a substantial adverse effect on, or poses a threat of danger to, any member of the SMCM community or SMCM itself is covered under this Policy.

A Reporting Party is encouraged to report misconduct regardless of where the incident occurred, or who committed it. Even if the College does not have jurisdiction over the Responding Party, the College will still take prompt action to provide for the safety and well-being of the Reporting Party and the broader campus community and will assist a Reporting Party in identifying the appropriate external reporting options.

## IV.  Non-Discrimination Policy

St. Mary's College of Maryland is fully committed to equal employment and educational opportunities for its employees and students. The College does not discriminate or condone discrimination or harassment in the workplace or academic setting, on the basis of race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law.

For purposes of this policy, harassment is defined as: (a) unwelcome conduct based on a legally protected class, including: race, color, religion, sex, national origin, gender identity/expression, sexual orientation, ethnicity, age, marital status, physical or mental disability, protected veteran status, or any other characteristic protected by law; and (b) that is so severe or pervasive that it interferes with an individuals' work or academic performance or creates an intimidating, hostile or offensive working environment.

The College's definitions of sexual harassment and related issues may be found in section VI, "Prohibited Conduct and Definitions," below.

All workplace and academic policies, programs and activities of the College are and shall be in conformity

with applicable federal and State laws on non-discrimination including, but not limited to: Title VI of the Civil Rights Act of 1964 as amended, Title IX of 1972 Education Amendments, Section 504 of the Rehabilitation Act of 1973, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974. The College's equal opportunity policy applies to the College's educational policies, admission policies, scholarship and loan programs and athletic programs. The policy applies to all employment decisions, including those affecting recruitment, advertising, job application procedures, hiring, upgrading, training, promotion, transfer, compensation, job assignments, benefits, and/or other terms, conditions, or privileges of employment, provided the individual is qualified, with or without reasonable accommodations, to perform the essential functions of the job.

The College's students, employees and applicants shall not be subjected to harassment, intimidation or any type of retaliation because they have (1) filed a complaint; (2) assisted or participated in an investigation, compliance review, hearing or any other activity related to the administration of any federal, state or local law requiring equal employment opportunity; (3) opposed any act or practice made unlawful by any federal, state or local law requiring equal opportunity; or (4) exercised any other legal right protected by federal, state or local law requiring equal opportunity.

For questions or concerns about these matters, college employees are encouraged to contact the Assistant Director of Human Resources/AA and EEO Officer in Glendening Hall, phone: (240) 895-4309. Students are encouraged to contact the Vice President for Student Affairs, Dean of Students, Campus Center 143, phone: (240) 895-4208; and the Title IX Coordinator, Lucille Clifton House, phone: (240) 895-4105, regarding concerns about sex-based discrimination.

### a. Prohibited sex discrimination

The College also does not discriminate on the basis of sex and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. Sec. 1681, *et seq.*, requires the College not discriminate in such a manner.

Prohibited sex discrimination covers sexual harassment, including sexual violence.  Examples of the types of conduct prohibited include but are not limited to the following examples:  non-consensual sexual intercourse, non-consensual sexual contact, non-consensual sexual exploitation, and/or examples found in the College's Sexual Misconduct Policy.

Inquiries concerning the application of Title IX may be referred to the College's Title IX Coordinator or to the Department of Education's Office for Civil Rights.  Our Title IX Coordinator's information can be found here:

> Michael Dunn, Title IX Coordinator, (240) 895-4105
> Lucille Clifton House, 47645 College Drive, St. Mary's City, MD 20686
> titleix@smcm.edu, mkdunn@smcm.edu

Contact information for the Department of Education's Office for Civil Rights:

> Philadelphia Office
> The Wanamaker Building
> 100 Penn Square East, Suite 515
> Philadelphia, PA 19107

> Telephone: 215-656-8541
> FAX: 215-656-8605
> Email: OCR.Philadelphia@ed.gov
> www.ed.gov/ocr

## V.  Privacy vs. Confidentiality

The College is committed to protecting the privacy of all individuals involved in a report of sexual misconduct. All College employees who are involved in the College's Title IX response, including the Title IX Coordinator, Deputy Title IX Coordinators, and investigators, receive specific training about respecting and safeguarding private information. Throughout the process, every effort will be made to protect the privacy interests of all individuals involved in a manner consistent with the need for a thorough review of the report.

### a.  Privacy and Confidentiality

Privacy and confidentiality have distinct meanings under this policy.

**Privacy:** Privacy generally means that information related to a report of sexual misconduct will only be shared with a limited circle of individuals. The use of this information is limited to those College employees who "need to know" in order to assist in the active review, investigation or resolution of the report.  While not bound by confidentiality, these individuals will be discreet and respect the privacy of all individuals involved in the process.

**Confidentiality:** Confidentiality means that information shared by an individual with designated campus or community professionals cannot be revealed to any other individual without the express permission of the individual. These campus and community professionals include mental health providers, medical providers, ordained clergy, rape crisis counselors and attorneys, all of whom have legally protected confidentiality. These individuals are prohibited from breaking confidentiality unless there is an imminent threat of harm to self or others or a suspicion of child abuse.

An individual who seeks completely confidential assistance may do so by speaking with professionals who have a legally protected confidentiality. On campus, confidential resources available to students include counselors in the Counseling Center, medical staff in the Health Center, and the staff therapist/advocate. Employees may access confidential assistance through the Employee Assistance Program. Information shared with these resources will remain confidential and will not be shared with the College or anyone else without express permission of the individual seeking services unless maintaining such confidentiality would result in harm to self or others. When a report involves suspected abuse of a minor under the age of 18, these confidential resources are **required** by Maryland law and by the College's Child Abuse Reporting Policy to notify child protective services and/or local law enforcement.  They are also required to notify the Title IX Coordinator that such a report has been made.

### b.  Responsible Employees

Under Title IX, a college or university is required to take immediate and corrective action if a "responsible employee" knew or, in the exercise of reasonable care, should have known about sexual misconduct that creates a hostile environment. At SMCM, employees with supervisory and leadership responsibilities on campus are considered "responsible employees." This includes all faculty, coaches, administrators, Resident Assistants/Residence Hall Coordinators, and other student employees/volunteers with a significant responsibility for student welfare.

Accordingly, with the exception of individuals who have legally protected confidentially (see section 1,

Resources), all "responsible employees" of the College are **required** to share with the Title IX Coordinator any report of sexual misconduct they receive or of which they become aware.

This allows the Title IX Coordinator to conduct an initial assessment of the reported behavior, ensure that a Reporting Party is familiar with the full range of options for resolution both on and off campus, and address the necessity for any interim remedies or accommodations to protect the safety of the Reporting Party or the community.  The Title IX Coordinator will seek the Reporting Party's expressed preferences, if any, as to course of action.

### c.  Reporting Party's Request for Privacy

Where a Reporting Party requests that the Reporting Party's name or other identifiable information not be shared with the Responding Party or that no formal action be taken, the College will balance this request with its dual obligation to provide a safe and non-discriminatory environment for all College community members and to remain true to principles of fundamental fairness that require notice and an opportunity to respond before action is taken against a Responding Party. The Title IX Coordinator evaluates such requests for privacy. In making this determination, the Title IX Coordinator may consider:

- The seriousness of the conduct;
- The respective ages and roles of the Reporting Party and Responding Party;
- The rights of the Responding Party to receive notice before disciplinary action is sought
- Circumstances that suggest there is an increased risk of the Responding Party committing additional acts of sexual violence or other violence (e.g., whether there have been other complaints or reports of harassment or misconduct about the same Responding Party, whether the Responding Party has a history of arrests or records from a prior school indicating a history of violence, whether the Responding Party threatened further sexual violence or other violence against the Reporting Party or others, and whether the sexual violence was committed by multiple Responding Parties)
- Circumstances that suggest there is an increased risk of future acts of sexual violence under similar circumstances (e.g., whether the Reporting Party's report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group)
- Whether the sexual violence was perpetrated with a weapon
- Whether the College possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).

The College will take all reasonable steps to investigate and respond to the complaint consistent with the request for privacy or request not to pursue an investigation. Where the College is unable to take action consistent with the request of the Reporting Party, the Title IX Coordinator will inform the Reporting Party about the College's chosen course of action.

### d.  Timely Warning and Other Considerations

If a report of misconduct discloses a serious or continuing threat to the SMCM community, the College may issue a campus wide timely warning (which can take the form of an email to campus) to protect the health or safety of the community. The timely warning will not include any identifying information about the Reporting Party.

The release of the names of the Reporting Party and Responding Party is guided by Family Educational Rights and Privacy Act ("FERPA") and the Clery Act.

All College proceedings are conducted in accordance with College policies and procedures (contained herein) and in compliance with the requirements of FERPA, the Clery Act, Title IX, the Campus SaVE Act, and state and federal law. No information shall be released from such proceedings except as required or permitted by law and College policy.

## VI.  Prohibited Conduct and Definitions

### a.  Prohibited Forms of Conduct

The College prohibits all forms of sexual misconduct, which encompasses a broad range of behavior. Sexual misconduct may occur between people of the same or different sexes, gender identities or expressions, or sexual orientations.

Within these broad categories, the College prohibits the following specific conduct:

**Sexual Harassment:** Any unwelcome sexual advance, unwelcome request for sexual favors, or other unwelcome verbal or physical conduct of a sexual nature when:

1. Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment, evaluation of academic work, or participation in any aspect of a College program or activity; or
2. Submission to or rejection of such conduct by an individual is used as the basis for academic, employment, or activity or program participation-related decisions affecting the individual; or
3. Such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance, i.e. it is sufficiently serious, pervasive or persistent as to create an intimidating, hostile, humiliating, demeaning, or sexually offensive working, academic, residential, or social environment under both a subjective and objective standard.

A single isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.

Sexual harassment also includes gender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex stereotyping, even if those acts do not involve conduct of a sexual nature.

Examples of conduct that may constitute sexual harassment as defined above may include a severe, persistent or pervasive pattern of unwelcome conduct that includes one or more of the following:

- Physical conduct:
    - o Unwelcome touching, sexual/physical assault, impeding, restraining, or blocking movements
    - o Unwanted sexual advances within the employment context
- Verbal conduct:
    - o Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual
    - o Objectively offensive comments of a sexual nature, including persistent or pervasive

sexually explicit statements, questions, jokes, or anecdotes
- Visual conduct:
  - Severe, persistent, or pervasive visual displays of suggestive, erotic, or degrading sexually oriented images that are not pedagogically appropriate
- Written conduct:
  - Letters, notes or electronic communications containing comments, words, or images described above
- Quid pro quo conduct:
  - Direct propositions of a sexual nature between those for whom a power imbalance or supervisory or other authority relationship exists
  - Offering employment benefits in exchange for sexual favors
  - Making submission to sexual advances an actual or implied condition of employment, work status, promotion, grades, or letters of recommendation, including subtle pressure for sexual activity, an element of which may be repeated requests for private meetings with no academic or work purpose
  - Making or threatening reprisals after a negative response to sexual advances

The following forms of conduct are prohibited under this policy. Each specific prohibited conduct may also be a form of sexual harassment.

**Non-Consensual Sexual Intercourse (Rape):** Any act of sexual intercourse with another individual without effective consent. Sexual intercourse includes vaginal or anal penetration, however slight, with a body part (e.g., penis, tongue, finger, hand) or object, or oral penetration involving mouth to genital contact. Non-consensual sexual intercourse includes incest, which is defined as sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law. Non-consensual sexual intercourse also includes statutory rape, which is defined as sexual intercourse with a person who is under the statutory age of consent.

**Non-Consensual Sexual Contact (Fondling):** Any intentional touching of the intimate parts of another person, causing another to touch one's intimate parts, or disrobing or exposure of another without effective consent. Intimate parts may include the genitalia, breast, buttocks, groin, or clothing covering those parts, or any other part of the body that is touched in a sexual manner. Sexual contact also includes attempted sexual intercourse.

**Sexual Exploitation:** Any act which takes non-consensual or abusive sexual advantage of another individual, either for their own advantage or benefit, or for the advantage or benefit of anyone other than the one being exploited. This behavior includes but is not limited to:

- Utilizing any electronics for the purpose of posting or publishing and/or capturing images of a sexual act without the consent or knowledge of the involved parties
- Publishing, recreating, or reproducing images of a sexual act without the knowledge or consent of the parties involved
- Peeping tommery/voyeurism
- Unwanted exposure to pornographic material
- Inducing incapacitation for the purpose of having sex with the incapacitated person regardless if sexual activity actually takes place
- Prostitution of another

- Knowingly exposing another individual to a sexually transmitted infection or virus without that individual's knowledge

**Stalking:** Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or to suffer substantial emotional distress. For the purposes of this definition, "course of conduct" means two or more acts, including but not limited to, acts which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows monitors, observes, surveils, threatens, or communicates to or about, a person, or interferes with a person's property. "Reasonable person" means a reasonable person under similar circumstances and with similar identities to the Reporting Party. "Substantial emotional distress" means significant mental suffering or anguish that may but does not necessarily, require medical or other professional treatment or counseling.

Stalking behaviors may include, but are not limited to abusive and excessive contact and/or monitoring using telephone calls, voice mails, emails, instant messaging, text messages, and/or social media to one's home or work; installing spyware on a person's computer or phone without consent; trespassing; following and/or threatening an individual or a person's friends and relatives; driving/walking by a person's home, school, and/or work; or vandalizing property.

**Relationship violence:** Relationship violence includes "dating violence" and "domestic violence."

**Dating violence:** Any act of violence, including but not limited to, sexual assault, physical abuse, threats of violence and other forms of violence, by a person who is or has been in a social relationship of a romantic or intimate natures with the Reporting Party. The existence of such a relationship shall be based on the Reporting Party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

**Domestic violence:** Any act of violence, including but not limited to, sexual assault, physical abuse, threats of violence and other forms of violence, by a current or former spouse or intimate partner of the Reporting Party, by a person with whom the Reporting Party shares a child in common, by a person who is cohabitating with or has cohabitated with the Reporting Party as a spouse or intimate partner, by a person similarly situated to a spouse of the Reporting Party under Maryland law, or by any other person against an adult or youth Reporting Party protected from those acts by domestic or family violence laws of Maryland.

**Harm to Others:** Words or types of conduct that threaten or endanger the health or safety of any person including physical abuse, verbal abuse, threats, intimidation, and/or harassment. This behavior is typically treated as a violation of the College's Code of Student Conduct (Article II, Section E). Acts which constitute harm to others that are a form of relationship violence, or are based on sex or gender, will be resolved under the Sexual Misconduct Policy.

**Retaliation:** Acts or attempts to retaliate or seek retribution against the Reporting Party, Responding Party, or any individual or group of individuals involved in the complaint, investigation and/or resolution of an allegation of sexual misconduct. Retaliation can be committed by any individual or group of individuals, not just a Responding Party or Reporting Party. Retaliation can take many forms, including threats, intimidation, continued abuse, violence or other forms of harm to others.

### b.  Other Definitions

**Effective Consent:**  Effective consent is defined as willingly, freely and knowledgably agreeing to engage in sexual conduct. Consensual sexual conduct is a mutual decision reached by all parties involved without any hint of force, threat, coercion, fraud, manipulation, intimidation, or reasonable fear of injury. Consent cannot be given if an individual is mentally or physically incapacitated (for example, due to excessive use of alcohol or drugs or a mental or physical condition). Silence, passivity, lack of active resistance or lack of active response *does not* imply consent. In addition, previous participation in sexual activity does not indicate current consent to participate. Consent to one form of sexual activity does not imply consent to other forms of sexual activity.

The following are <u>essential elements</u> of effective consent:

- *Informed and reciprocal*: All parties must demonstrate a clear and mutual understanding of the nature and scope of the act to which they are consenting and a willingness to do the same thing, at the same time, in the same way.

- *Mutually understandable*: Communication regarding consent consists of mutually understandable words and/or actions that indicate an unambiguous willingness to engage in sexual activity. In the absence of clear communication or outward demonstration, there is no consent.  Relying solely upon non- verbal communication can lead to a false conclusion as to whether consent was sought or given.

- *Not indefinite*: Consent may be withdrawn by any party at any time.  Recognizing the dynamic nature of sexual activity, individuals choosing to engage in sexual activity must evaluate consent in an ongoing manner and communicate clearly throughout all stages of sexual activity.  Withdrawal of consent can be an expressed "no" or can be based on a clear outward demonstration that conveys that an individual is hesitant, confused, uncertain or is no longer a mutual participant. Once consent is withdrawn, the sexual activity must cease immediately and all parties must obtain mutually expressed or clearly stated consent before continuing further sexual activity.

- *Not unlimited:* Consent to one form of sexual contact does not constitute consent to all forms of sexual contact, nor does consent to sexual activity with one person constitute consent to activity with any other person.  Each participant in a sexual encounter must consent to each form of sexual contact with each participant.

Even in the context of a current or previous intimate relationship, each party must consent to each instance of sexual contact each time. The consent must be based on mutually understandable communication that clearly indicates a willingness to engage in sexual activity. The mere fact that there has been prior intimacy or sexual activity does not, by itself, imply consent to future acts.

**Force:** Force is the use or threat of physical violence or intimidation to overcome an individual's freedom of will to choose whether or not to participate in sexual activity. Force may also include moral, intellectual, psychological or emotional force.  For the use of force to be demonstrated, there is no requirement that a Reporting Party resists the sexual advance or request. However, resistance by the Reporting Party will be viewed as a clear demonstration of non-consent.

**Coercion:** Coercion is the improper use of pressure to compel another individual to initiate or continue sexual activity against the individual's will. Coercion can include a wide range of behaviors, including intimidation, manipulation, threats and blackmail. A person's words or conduct are sufficient to constitute coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity. Examples of coercion include threatening to disclose another individual's private sexual information (sexual orientation, gender identity or gender expression) and threatening to harm oneself if the other party does not engage in the sexual activity.

**Incapacitation**: Incapacitation is a state where an individual cannot make an informed and rational decision to engage in sexual activity because the individual lacks conscious knowledge of the nature of the act (e.g., to understand the who, what, when, where, why or how of the sexual interaction) and/or is physically helpless. An individual is incapacitated, and therefore unable to give consent, if s/he is asleep, unconscious, or otherwise unaware that sexual activity is occurring.

Incapacitation may result from the use of alcohol and/or drugs. Consumption of alcohol or other drugs alone is <u>insufficient</u> to establish incapacitation as it is a state beyond drunkenness or intoxication. The impact of alcohol and drugs varies from person to person; however, warning signs that a person may be approaching incapacitation may include but may not be limited to slurred speech, vomiting, unsteady gait, odor of alcohol, combativeness, or emotional volatility.

Evaluating incapacitation requires an assessment of how the consumption of alcohol and/or drugs impacts an individual's:

- decision-making ability;
- awareness of consequences;
- ability to make informed judgments; or
- capacity to appreciate the nature and the quality of the act.

Evaluating incapacitation also requires an assessment of whether a Responding Party knew or should have known that the Reporting Party was incapacitated based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in the Responding Party's position.

**Alcohol and Other Drugs:** In general, sexual contact while under the influence of alcohol or other drugs poses a risk to all parties. Alcohol and drugs impair a person's decision-making capacity, awareness of the consequences, and ability to make informed judgments. It is especially important, therefore, that anyone engaging in sexual activity be aware of the other person's level of intoxication. If there is **<u>any doubt</u>** as to the level or extent of the other individual's intoxication or impairment, the prudent course of action is **<u>to forgo or cease</u>** any sexual contact or activity.

Being intoxicated or impaired by drugs or alcohol is **<u>never an excuse</u>** for sexual misconduct and does not diminish one's responsibility to obtain consent.

## VII. Reporting

*The College encourages all individuals to seek assistance from a medical provider and/or law enforcement immediately after an incident of sexual violence. This is the best option to ensure the preservation of evidence and to begin a timely investigative and remedial response.*

The College has a strong interest in supporting those who experience sexual misconduct and encourages all individuals or third party witnesses to report any incident to the College *and* to local law enforcement. Reporting options are not mutually exclusive. Both campus and criminal reports may be pursued simultaneously.

Making a report means telling someone in authority what happened -- in person, by telephone, in writing or by email. At the time a report is made, a Reporting Party does not have to decide whether or not to request any particular course of action, nor does a Reporting Party need to know how to label what happened. Choosing to make a report, and deciding how to proceed after making the report, can be a process that unfolds over time. The College provides support that can assist each individual in making these important decisions and, to the extent legally possible, will respect an individual's autonomy in deciding how to proceed. In this process, the College will balance the individual's interest with its obligation to provide a safe and non-discriminatory environment for all members of the College community.

Any individual who reports sexual misconduct can be assured that all reports will be investigated and resolved in a fair and impartial manner. A Reporting Party, a Responding Party and all individuals involved can expect to be treated with dignity and respect. In every report under this Policy, the College will make an immediate assessment of any risk of harm to the Reporting Party or to the broader campus community and will take steps necessary to address those risks. These steps will include interim measures to provide for the safety of the individual and the campus community.

### a. Emergency and External Reporting Options

The College will help any SMCM community member to get to a safe place, and will provide coordination with law enforcement and information about on- and off-campus resources and options for resolution. The College will fully and promptly cooperate in obtaining appropriate medical attention for a Reporting Party, including transportation for the Reporting Party to St. Mary's Hospital.

**Law Enforcement:**
**SMCM Public Safety**
(240) 895-4911 or x4911
from any campus phone
**St. Mary's County Sheriff's Office**
For emergencies: 911
For concerning situations:
(301) 475-4200 x1900
**Maryland State Police**
**Leonardtown Barracks**
(301) 475-8955

**Medical Providers:**
**St. Mary's Hospital**
(301) 475-8981
Provides Sexual Assault Forensic Exams
**Calvert Memorial Hospital**
(410) 535-4000
Provides Sexual Assault Forensic Exams

**SMCM Health Services**
(240) 895-4289
Provides medical treatment
Monday through Friday, 8:00 a.m. – 5:00 p.m.

**b. Reporting Considerations: Timeliness and Location of Incident**

Reporting Parties and third-party witnesses are encouraged to report sexual misconduct as soon as possible in order to maximize the College's ability to respond promptly and effectively. The College does not, however, limit the time frame for reporting. If the Responding Party is not a member of the SMCM community, the College will still seek to meet its Title IX obligation by taking steps to end the harassment, prevent its recurrence, and address its effects. The College's ability to take disciplinary action against the Responding Party may be limited, but the College will assist the Reporting Party in identifying the appropriate external reporting options.

An incident does not have to occur on campus to be reported to the College. Off-campus conduct that is likely to have a substantial effect on the Reporting Party's on-campus life and activities or poses a threat or danger to members of the SMCM community may also be addressed under this Policy.

**c. Amnesty for Alcohol or Other Drug Use**

The College encourages the reporting of prohibited conduct under this Policy. It is in the best interest of this community that as many Reporting Parties as possible choose to report to college officials, and that witnesses come forward to share what they know. To encourage reporting, an individual who reports sexual misconduct, either as a Reporting Party or a third-party witness, will not be subject to disciplinary action by the College for violation of the College's policy for one's own personal consumption of alcohol or drugs (except for a mandatory intervention for substance abuse), if the College determines that:

- the violation occurred during or near the time of the alleged sexual misconduct,
- the individual made the report of sexual misconduct or is participating in an investigation as a witness, in good faith, and
- the violation was not an act that was reasonably likely to place the health and safety of another individual at risk.

The College may initiate an educational discussion or pursue other educational remedies regarding alcohol or other drugs.

**d. Coordination with Law Enforcement**

A Reporting Party has the right to file criminal charges with the appropriate law enforcement official or may decline to notify law enforcement. The College encourages Reporting Parties to pursue criminal action for incidents of sexual misconduct that may also be crimes under Maryland law. The College will assist a Reporting Party in making a criminal report if a Reporting Party decides to pursue the criminal process. The College will cooperate with law enforcement agencies.

The College's Policy, definitions and standard of proof may differ from Maryland criminal law. A Reporting Party may seek recourse under this Policy and/or pursue criminal action. Neither law enforcement's determination whether or not to prosecute a Responding Party, nor the outcome of any criminal prosecution, are determinative of whether a violation of this Policy has occurred. Proceedings under this Policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus.

At the request of law enforcement, the College may agree to defer its Title IX fact gathering until after the initial stages of a criminal investigation. The College will nevertheless communicate with the Reporting Party regarding Title IX protections, procedural options and the implementation of interim measures to assure safety and well-being. The College will promptly resume its Title IX fact gathering as soon as it is

informed that law enforcement has completed its initial investigation.

    **e.  Statement Against Retaliation**

It is a violation of College Policy and Title IX to retaliate in any way against an individual because the individual raised allegations of sexual harassment, sexual violence, stalking, or relationship violence or participated in an investigation. The College recognizes that retaliation can take many forms, may be committed by or against an individual or a group, and that a Reporting Party, Responding Party or third party may commit or be the subject of retaliation.

The College shall not retaliate against an individual who files a complaint for sexual misconduct or who participates as a witness in an investigation of sexual misconduct. The College will take immediate and responsive action to any report of retaliation and will pursue disciplinary action as appropriate. An individual reporting sexual misconduct is entitled to protection from any form of retaliation following a report that is made in good faith, even if the report does not later result in a finding of responsibility.

    **f.  False Reports**

The College will not tolerate intentional false reporting of incidents. The College takes the validity of information **very seriously** as a charge of sexual misconduct may have severe consequences. A good-faith complaint that results in a finding of not responsible is not considered a false or fabricated accusation of sexual misconduct. However, when a Reporting Party or third party witness is found to have fabricated allegations or given false information with malicious intent or in bad faith, that individual may be subject to disciplinary action. It is a violation of the Code of Student Conduct to make an intentionally false report of any policy violation, and it may also violate state criminal statutes and civil defamation laws. Similarly, a Responding Party or witness who is later proven to have intentionally given false information during the course of an investigation or conduct action may be subject to disciplinary action.

## VIII.  Interim Measures, Remedies and Accommodations

    **a.  Overview**

Upon receipt of a report, the College will impose reasonable and appropriate interim measures designed to eliminate the hostile environment and protect the parties involved. The College will make reasonable efforts to communicate with the parties to ensure that all safety, emotional and physical well-being concerns are being addressed; namely, the College will offer to change academic, living, transportation, and working situations or protective measures, if such accommodation is reasonably available. Interim measures may be imposed regardless of whether formal disciplinary action is sought by the Reporting Party or the College.

A Reporting Party or Responding Party may request a No-Contact Order or other protection, or the College may choose to impose interim measures at its discretion to ensure the safety of all parties, the broader College community and/or the integrity of the process.

All individuals are encouraged to report concerns about the failure of another individual to abide by any restrictions imposed by an interim measure. The College will take immediate and responsive action to enforce a previously implemented measure. Failure to abide by an interim measure imposed by the College is a violation of this Policy, and the College may pursue disciplinary action for any failure to comply.

### b. Range of Measures

Interim measures will be implemented at the discretion of the College. Potential remedies, which may be applied to the Reporting Party and/or the Responding Party, include:

- Access to counseling services and assistance in setting up initial appointment, both on and off campus.
- Imposition of campus No-Contact Order.
- Rescheduling of exams and assignments (in conjunction with appropriate faculty).
- Providing alternative course completion options (with the agreement of the appropriate faculty).
- Change in class schedule, including the ability to take an "incomplete," drop a course without penalty or transfer sections (with the agreement of the appropriate faculty).
- Change in work schedule or job assignment.
- Change in on-campus housing.
- Arranging to dissolve a housing contract and pro-rating a refund in accordance with campus housing policies.
- Assistance from College support staff in completing housing relocation.
- Limit an individual or organization's access to certain College facilities or activities pending resolution of the matter.
- Voluntary leave of absence.
- Providing an escort to ensure safe movement between classes and activities.
- Providing medical services.
- Providing academic support services, such as tutoring.
- Interim suspension or College-imposed leave.
- Assistance from the College's designated school official regarding impact of interim measures on students who are not U.S. citizens.
- Assistance from the College's financial aid office regarding the impact of measures on a student's financial aid.
- Any other remedy that can be tailored to the involved individuals to achieve goals of this policy.

### c. Interim Suspension

The Dean of Students or designee may suspend a student for an interim period pending the adjudication of a complaint of sexual misconduct. An interim suspension may become effective immediately without prior notice whenever there is evidence that the continued presence of the student Responding Party on the College campus poses a substantial threat to others, or to the stability and continuance of normal College functions. In cases where there is an appeal following the adjudication of a complaint of sexual misconduct in which an interim suspension was issued, the interim suspension shall continue during the appeal . A student suspended on an interim basis may not withdraw from the College before the conclusion of the adjudication and appeal, if any.

## IX.    Options for Resolution

Please refer to the Procedures to Resolve Complaints of Sexual Misconduct (the Procedures) for a complete overview and description of the resolution options available. The Procedures may be found here: www.smcm.edu/campus-rights.

**a.  Time Frame for Resolution**

The College seeks to resolve all reports within 60 calendar days of the initial report. All time frames expressed in this Policy are meant to be guidelines rather than rigid requirements. Extenuating circumstances may arise that require the extension of time frames, including extension beyond 60 days. Extenuating circumstances may include the complexity and scope of the allegations, the number of witnesses involved, the availability of the parties or witnesses, the effect of a concurrent criminal investigation, any intervening school break or vacation, or other unforeseen circumstances.

In general, a Reporting Party and Responding Party can expect that the process will proceed according to the time frames provided in this Policy and accompanying procedures. The College will keep all parties updated on the status of resolution procedures throughout the process. In the event that the investigation and resolution exceed this time frame, the College will notify all parties of the reason(s) for the delay and the expected adjustment in time frames. Best efforts will be made to complete the process in a timely manner by balancing principles of thoroughness and fundamental fairness with promptness.

## X.    Education and Prevention Programs

SMCM is committed to the prevention of sexual misconduct through education and awareness programs. Throughout the year, programs designed to promote awareness are presented by a variety of campus resources. Prevention programs include an overview of the College's policies and procedures, relevant definitions, including prohibited conduct, discussion of the impact of alcohol and illegal drug use, effective consent, safe and positive options for bystander intervention, and information about risk reduction. Incoming first year students and new employees will receive primary prevention and awareness programming as part of their orientation.  Returning students and employees will receive ongoing training on a periodic basis.  SMCM's Title IX Coordinator oversees the education and prevention calendar and tailors programming to campus needs and climate. All educational programs include a review of resources and reporting options available for students, faculty and staff.

## XI.    Agreements with Local Law Enforcement and Rape Crisis Programs

The College must, at a minimum, pursue formalized agreements with (1) the College's local law enforcement agency and (2) a State designated rape crisis program and/or federally recognized sexual assault coalition.  Agreements with law enforcement agencies must comply with Title IX and clearly state when an institution will refer a matter to a local law enforcement agency.  Agreements with rape crisis or sexual assault programs must formalize a commitment to provide trauma-informed services to victims of sexual assault and to improve the institution's overall response to sexual assault.

## XII. Campus Sexual Assault Climate Survey

On or before March 1, 2016, and at least ever two (2) years thereafter, the College shall (1) develop an appropriate sexual assault campus climate survey using nationally recognized best practices for research and climate surveys, and (2) administer the sexual assault campus climate survey to students in accordance with the procedures set by the Maryland Higher Education Commission ("MHEC"). On or before June 1, 2016, and at least every two (2) years thereafter, the College shall submit to MHEC a report in accordance with the requirements set forth in Md. Code Ann. Educ. § 11-601(g).

## XIII. Conflicts with Other Policies

To the extent that this Policy conflicts with any other College policy, procedure, handbook, faculty or employee bylaw, agreement, or process, this Policy shall prevail.

# Exhibit B

The St. Mary's College of Maryland Procedures to Resolve
Complaints of Sexual Misconduct against a Student

# St. Mary's College of Maryland
## Procedures to Resolve Complaints of
## Sexual Misconduct against a Student

## Contents

I.    Overview ................................................................................................................................1

II.    Initial Assessment ...............................................................................................................2

III.    Reporting Party's Request Not to Pursue Investigation or Adjudication ...........................4

IV.    Confidentiality of Complaints and Reports........................................................................5

V.    Interim Measures and Resources........................................................................................5

VI.    Advisors and Attorneys......................................................................................................6

VII.    Resolution ..........................................................................................................................6

VIII.    Appeals ............................................................................................................................16

IX.    Records ............................................................................................................................19

X.    The Family Education Rights and Privacy Act ...............................................................19

XI.    Conflicts with the Policy and Procedures .......................................................................20

### I.    Overview

These Procedures to Resolve Complaints of Sexual Misconduct against a Student (Student Procedures) provide a process for the prompt and equitable investigation and adjudication of complaints of sexual and gender-based discrimination, sexual and gender-based harassment, sexual assault, relationship violence and stalking (collectively referred to as Sexual Misconduct) against a student enrolled at St. Mary's College of Maryland (the College). The Student Procedures ensure the College's compliance with federal and State law as well as the College's Policy against Sexual Misconduct (the Policy).

Any person alleging Sexual Misconduct against one of the College's students may submit a report to the College as set forth below. Anyone may submit a report, including but not limited to a student; a member of the faculty, administration or staff; a visitor or guest to the campus community; local police; or a family member. The College, on its own, may also initiate, investigate, and adjudicate complaints of Sexual Misconduct against a student under the Student Procedures. The Student Procedures also address reports of retaliation allegedly committed by a student in connection with any Sexual Misconduct complaint, investigation or adjudication.

Complaints against a non-student (i.e., faculty, staff, or a third party) shall not proceed under the Student Procedures. Such complaints will be handled using the Procedures to Resolve Complaint of

Sexual Misconduct against a College Employee, Volunteer or Contractor available at www.smcm.edu/campus-rights.

The Student Procedures are effective as of July 1, 2016, and replace and supersede any prior procedures related to complaints, reports, investigation or adjudication of any allegation of Sexual Misconduct against one of the College's students.

Any individual who wishes to make a report of Sexual Misconduct is encouraged to make a report directly to the Title IX Coordinator, a Deputy Title IX Coordinator (Deputy), the Dean of Students Office, Public Safety or the Office of Student Conduct. Reports can be made in person, by telephone, by email or by submission of an online form.

Once the College knows of possible Sexual Misconduct, it will take immediate and appropriate action to investigate the report or otherwise determine what occurred. This obligation applies to any allegations of Sexual Misconduct covered by the Policy regardless of whether a parallel law enforcement investigation or action is pending and regardless of whether a Formal Complaint (defined below) is provided.

In every instance when a report is received under the Policy, the Title IX Coordinator or Deputy will conduct an **Initial Assessment** to ensure the safety of the person who allegedly experienced Sexual Misconduct (Reporting Party) and to determine the nature of the allegations against the person who allegedly engaged in Sexual Misconduct (Responding Party). At the conclusion of the Initial Assessment, the Title IX Coordinator or Deputy will ascertain whether the Reporting Party wishes to pursue an Informal Resolution or Formal Resolution.

**Informal Resolution** is a voluntary process wherein the Title IX Coordinator or Deputy facilitates an agreement between the Reporting Party and the Responding Party (collectively referred to as the "Parties") to implement non-disciplinary measures to resolve allegations of sexual or gender-based discrimination, sexual or gender-based harassment, relationship violence that does not involve allegations of sexual assault, and/or stalking. Informal Resolution cannot be used to resolve allegations of sexual assault.

**Investigation** is the process of gathering facts regarding a Reporting Party's allegations. **Formal Resolution** is a process by which the Investigator(s) review the facts gathered during the Investigation and determine whether the Responding Party is responsible for a violation of the Policy. If so, the Investigator(s) issue disciplinary sanctions, up to and including expulsion.

### II.      Initial Assessment

The first step of the Initial Assessment will usually be a preliminary meeting between the Reporting Party and the Title IX Coordinator or Deputy. If the report was made by a third party, the Title IX Coordinator or Deputy may meet with the third party to assess the nature of the allegations and the names of the persons involved in the incident.

The purpose of the preliminary meeting is to gain a basic understanding of the nature and circumstances of the report and to provide the Reporting Party with information about resources, procedural options and interim measures. At the preliminary meeting, the Title IX Coordinator or Deputy will:

- Assess the nature and circumstances of the allegations;
- Address immediate physical safety and emotional well-being needs of the Reporting Party;
- Notify the Reporting Party of the right to contact law enforcement;
- Offer assistance and transportation to the Reporting Party to see medical treatment;
- Inform the Reporting Party of the importance of preservation of evidence;
- Provide the Reporting Party with information about on- and off-campus resources;
- Provide the Reporting Party with information about Interim Measures (defined below);
- Explain procedural options, including Informal Resolution, if applicable, and Formal Resolution;
- Inform the Reporting Party of the Reporting Party's right to have an advisor, advocate, or support person present during any meeting throughout the process;
- Assess for pattern evidence or other similar conduct by Responding Party; and
- Explain the College's Policy prohibiting retaliation.

During the Initial Assessment, the Title IX Coordinator or Deputy will determine the risk of harm to the broader campus community and take steps necessary to address any identified risks. If the report involves allegations of a crime, the Title IX Coordinator or Deputy will report the alleged crime to the Director of Public Safety for inclusion in the College's daily crime log and will assess whether the reported conduct requires issuance of a timely warning under the Clery Act or must be included in the College's annual Clery Report.

The Initial Assessment will proceed to the point where a reasonable assessment of the safety of the Reporting Party and of the campus community can be made. At the conclusion of the Initial Assessment, the Title IX Coordinator or Deputy will determine whether the report falls within the scope of the definition of Sexual Misconduct. If so, the Title IX Coordinator or Deputy will ascertain whether the Reporting Party wishes to pursue an Informal Resolution or Formal Resolution.

If the Reporting Party wishes to pursue a Formal Resolution, the Title IX Coordinator or Deputy will assign an Investigator(s) to begin an Investigation.

If the Reporting Party wishes to pursue an Informal Resolution and the allegations of Sexual Misconduct do not involve allegations of sexual assault, the Title IX Coordinator or Deputy will contact the Responding Party to begin the Informal Resolution process. If the Reporting Party wishes to pursue an Informal Resolution and the allegations involve sexual assault, the Title IX Coordinator will inform the Reporting Party that the Informal Resolution process is not available and will offer to pursue an Investigation and Formal Resolution.

The Title IX Coordinator or Deputy also may offer the Reporting Party protective remedies that do not impact the Responding Party. The Title IX Coordinator or Deputy will confirm the Reporting Party's desired process via email.

The Title IX Coordinator or Deputy may consult relevant College employees and legal counsel as needed.

### III.     Reporting Party's Request Not to Pursue Investigation or Adjudication

A Reporting Party may request that the College take no action, that an Investigation not be conducted, or that a specific adjudication process or part thereof not take place. A Reporting Party may also decline to respond to requests from the Title IX Coordinator or Deputy to discuss the allegations of Sexual Misconduct.

If the Reporting Party makes one of these requests or does not respond to requests to discuss the allegations of Sexual Misconduct, the Title IX Coordinator or Deputy will consider the reasons for the request or decision not to appear for a meeting, including concerns about the continued safety of the Reporting Party and members of the campus community. The Title IX Coordinator or Deputy will inform the Reporting Party that the College's ability to investigate, discipline the Responding Party or otherwise respond to the report may be limited.

The Title IX Coordinator or Deputy will balance the Reporting Party's desire not to have the report investigated or adjudicated against considerations about the continued health and safety of members of the community.  If a Reporting Party does not want to have a report investigated or declines to respond to requests to discuss the allegations, and the Title IX Coordinator or Deputy has concerns that not taking action might violate law and/or endanger the health or safety of any individual, the Title IX Coordinator or Deputy will weigh the following factors in considering a request that no Investigation or adjudication be conducted:

- The seriousness of the conduct;

- The respective ages and roles of the Reporting Party and Responding Party;

- The rights of the Responding Party to receive notice before disciplinary action is sought;

- Circumstances that suggest there is an increased risk of the Responding Party committing additional acts of sexual violence or other violence (*e.g.*, whether there have been other complaints or reports of harassment or misconduct about the same Responding Party, whether the Responding Party has a history of arrests or records from a prior school indicating a history of violence, whether the Responding Party threatened further sexual violence or other violence against the Reporting Party or others, and whether the sexual violence was committed by multiple Responding Parties);

- Circumstances that suggest there is an increased risk of future acts of sexual violence under similar circumstances (e.g., whether the Reporting Party's report reveals a pattern of perpetration through the use of illicit use of drugs or alcohol, at a given location or by a particular group);

- Whether the sexual violence was perpetrated with a weapon; and

- Whether the College possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).

The Title IX Coordinator or Deputy may consult with relevant College employees, including but not limited to, the Dean of Students, the Provost, the Director of Human Resources, and legal counsel to determine whether a request not to investigate or adjudicate may be granted. The Title IX Coordinator or Deputy will make the ultimate decision about whether to conduct an Investigation or respond to the report in another manner, including taking protective remedies, such as those described below.

The College will take all reasonable steps to investigate and respond to the report consistent with the request for privacy or request not to pursue an Investigation. If the College is unable to take action consistent with the request of the Reporting Party, the Title IX Coordinator or Deputy will inform the Reporting Party via email about the College's chosen course of action.

## IV. Confidentiality of Complaints and Reports

The College understands that the Reporting Party, Responding Party, and witnesses involved in any Sexual Misconduct matter desire confidentiality during the investigation and adjudication of such matters. While the College will keep these matters confidential to the extent possible and as required by law, the College cannot ensure complete confidentiality, or even the confidentiality requested by parties, in all cases.

The Title IX Coordinator, Deputy and Investigators will, to the best of their ability, keep private the information provided by the Reporting Party, Responding Party, or witnesses. The Title IX Coordinator, Deputy, and Investigator(s) will disclose this information only to individuals who need to know information related to the allegations in order to investigate or adjudicate the matter; to protect the health, safety and wellness of the College community; and/or to individuals allowed to know by law.

In addition, the Title IX Coordinator may need to disclose information to law enforcement consistent with State and federal law; to other College employees as necessary for coordinating Interim Measures; for health, welfare, safety, and other appropriate reasons; as well as to government agencies who review the College's compliance with federal and State law. Information about complaints and reports, absent personally identifiable information, may be reported as needed within the College and/or to external entities for statistical and analysis purposes pursuant to applicable federal and State law and College policy.

Confidential assistance can be obtained through the Confidential Resources listed in the Policy, available at www.smcm.edu/campus-rights.

## V. Interim Measures and Resources

Any participant in the investigation process may request Interim Measures, as appropriate, to assist or protect the Parties during any investigation and adjudication process. The College may also initiate Interim Measures on its own. More information on obtaining Interim Measures may be found in the Policy, available at www.smcm.edu/campus-rights.

The Title IX Coordinator or Deputy will also inform the participants in the investigation of existing options for counseling, health, mental health, victim advocacy, and other services available on- and off-campus during any investigation and adjudication of allegations of Sexual Misconduct. A

list of on-campus and off-campus resources is located in the Policy, available at
www.smcm.edu/campus-rights.


**VI.      Advisors and Attorneys**

The Parties have the right to be assisted by an advisor of their choice to provide support through the investigation and adjudication of a complaint of Sexual Misconduct. Advisors may not be a witness or other party in the proceeding. Parties who wish to consult with an attorney may do so at their own expense.  Advisors may accompany the student to any meeting or interview.

Advisors have no speaking role in a meeting or interview and are not permitted to ask or answer questions. An advisor may only provide advice to the Parties in a non-disruptive manner (such as communicating in writing). All communication regarding the resolution process will be directed to the student. The College will only respond to communications received from the student. An advisor will not be permitted to communicate on the student's behalf. Students may contact the Title IX Coordinator for a referral to a trained advisor.

If a Party wishes to have an advisor accompany the Party to a meeting or interview, the Party must give notice to the Title IX Coordinator or Deputy at least twenty-four (24) hours prior to any meeting or interview that an advisor will attend.  Students should select an advisor whose schedule allows attendance at any meeting or interview. Delays will not normally be allowed due to the scheduling conflicts of an advisor.

In the context of serving as an advisor to a Party, an advisor's statements are not made on behalf of the College but are solely made as an advocate for a Party.   It is important, when one chooses an advisor, to ask for the individual's consent to serve in this capacity before divulging any confidential information.


**VII.     Resolution**

There are two avenues for resolution of allegations of Sexual Misconduct: Informal Resolution and Formal Resolution.  The Title IX Coordinator or Deputy is available to explain the procedures for either form of resolution.

For a summary of the differences between Informal and Formal Resolution, please see the table below:

| Informal Resolution | Formal Resolution |
|---|---|
| Agreement between the Parties to implement non-disciplinary remedies, facilitated by Title IX Coordinator or Deputy | Process by which the Investigator(s) review the facts gathered during an Investigation and determine whether the Responding Party is responsible for a violation of the Policy |
| Available for allegations of any kind of sexual misconduct except sexual assault | Available for allegations of any kind of sexual misconduct |
| Parties are not required to use Informal Resolution | If a Responding Party is found responsible, Investigator(s) issue disciplinary sanctions, up to and including expulsion |
| At any point during Informal Resolution, Parties or the Title IX Coordinator or Deputy may end the Informal Resolution and begin a Formal Resolution | |

a. **Informal Resolution**

The Informal Resolution process may be used at any time after the College has sufficient information about the nature and scope of the alleged Sexual Misconduct, which may occur at any time after the Initial Assessment. An Informal Resolution is an agreement between the Parties to implement certain non-disciplinary remedies that is facilitated and approved by the Title IX Coordinator or Deputy.

Except where the Reporting Party has alleged that a Sexual Assault has occurred, the Reporting Party generally has the option to engage in the Informal Resolution process at any time during the investigation and adjudication process. In cases involving allegations of Sexual Assault, Informal Resolution is not appropriate at any step in the process, even if both Parties indicate a preference for Informal Resolution.

Regardless of the type of allegations, the Parties are never required to use the Informal Resolution process. If, at any point during the Informal Resolution process, the Parties or the Title IX Coordinator or Deputy wishes to cease the Informal Resolution process and to proceed through Formal Resolution process, the Formal Resolution process outlined below will be implemented.

The Informal Resolution must adequately address the concerns of the Reporting Party, as well as the rights of the Responding Party and the overall intent of the College to stop, remedy and prevent Sexual Misconduct. An Informal Resolution might include, but is not limited to, non-disciplinary remedies such as:

- Implementing agreed upon Interim Measures (see the Policy, available at www.smcm.edu/campus-rights, for a list of possible Interim Measures);
- Providing training or counseling to an individual or group;
- Having an informal discussion with the Responding Party;
- Requesting a written apology from the Responding Party;
- Increasing monitoring or security at specified locations; or
- Facilitating a confidential conversation between the Parties; and
- Any other remedy that can be tailored to the Parties to achieve the goals of the Policy.

**b. Formal Resolution**

For an overview of the Formal Resolution process, please see the figure below.



**i. Formal Complaint**

A person wishing to initiate a Formal Resolution against a Student (i.e., a formal investigation and adjudication) should generally submit a written statement (Formal Complaint) using the College's Sexual Misconduct Formal Complaint Form. The Formal Complaint should set forth the details of the Reporting Party's allegations, including, to the extent known:

- The names and contact information of the person(s) involved in the incident of Sexual Misconduct,
- The names and contact information of any witnesses to the incident of Sexual Misconduct,
- The relevant dates and places,
- Statements made by the Parties and/or witnesses that may be relevant to the allegations,
- Any documentation or communications to support the claim, and
- The remedy requested.

The Formal Complaint Form is located at www.smcm.edu/campus-rights. Hard copies are also available in the Office of the Title IX Coordinator.

If the Reporting Party declines to submit a written Formal Complaint, the Title IX Coordinator or Deputy may draft the Formal Complaint based on the Reporting Party's oral description of the allegations and submit it to the Reporting Party to review for accuracy.

The Formal Complaint must be signed by the Reporting Party. If the Reporting Party declines to sign the Formal Complaint or chooses not to cooperate with the investigation, the Title IX Coordinator or Deputy may go forward with these Procedures, as required, without the Reporting Party's participation.

A Reporting Party should schedule an in-person meeting with the Title IX Coordinator or Deputy as promptly as possible to permit the College to accurately investigate the allegations and appropriately remedy any violation(s).

The Reporting Party may supplement the Formal Complaint with additional information during the Investigation.

### ii. Notice of Investigation

As soon as practicable, the Title IX Coordinator or Deputy will send a written notice (Notice) to the Parties that the Formal Resolution process has been initiated and that an Investigation will begin. The Notice will be sent via email concurrently to each Party and if assigned, campus mailboxes. The Notice may be provided to College employees who, in the discretion of the Title IX Coordinator or Deputy, have a need to know that the Formal Resolution process has begun.

The Notice will be prepared by the Title IX Coordinator or Deputy and will include:

- The name of the Reporting Party;
- The date, time and place of the alleged Sexual Misconduct, to the extent known;
- The Policy provisions alleged to have been violated;
- The range of potential sanctions for the alleged violations; and
- The name(s) of the investigator(s) who have been appointed.

If additional allegations are revealed during the Investigation, the Title IX Coordinator or Deputy will send a revised Notice to the Parties.

### 1. Appointment of Investigator(s)

Upon receipt of the Formal Complaint, the Title IX Coordinator or Deputy shall appoint one (1) or more Investigators who have specific training and experience investigating allegations of Sexual Misconduct (Investigator(s)). The Investigator(s) may be employees of the College or external Investigator(s) engaged to assist the College in its fact-gathering. The Title IX Coordinator or Deputy may appoint a team of two Investigators, which may include the pairing of an external investigator with a College employee. Any Investigator chosen to conduct the Investigation must be impartial and free of any conflict of interest.

## 2. Investigators' Conflicts of Interest

A conflict of interest may arise if the Investigator is related to, has a friendship with, or otherwise has had interactions with one of the Parties or witnesses that may compromise the fairness or impartiality of the investigation. In the rare situation in which an actual or perceived conflict of interest arises from the involvement of an Investigator, that conflict must be disclosed to all Parties and any potential or actual conflict must be appropriately addressed.

If a Party has reason to believe that an Investigator for the case has a conflict of interest, the Party should notify the Title IX Coordinator or Deputy immediately via email and provide the reasons why the Party believes there is a conflict of interest. Likewise, an Investigator must promptly disclose any potential conflict of interest the Investigator might have in a particular case. The Title IX Coordinator or Deputy will review the information provided and make a determination regarding whether the Investigator should be replaced with another Investigator.

### iii. Coordination with Law Enforcement

At the request of law enforcement, the College may agree to defer its Investigation until after the initial stages of a criminal investigation. The College will nevertheless communicate with the Reporting Party regarding Title IX rights, procedural options and the implementation of interim measures to assure safety and well-being. The College will promptly resume its Investigation as soon as law enforcement has completed its initial investigation.

### iv. Investigation

The Investigation is designed to provide a fair, impartial, and reliable gathering of the facts. All individuals interviewed during the Investigation, including the Parties and any witnesses, will be treated with appropriate sensitivity and respect. The Investigation will safeguard the privacy of the individuals involved as much as possible, consistent with the need for a full assessment of the facts. At the commencement of the Investigation, the Title IX Coordinator or Deputy will provide the Investigator(s) with a copy of the Formal Complaint.

The Investigation ordinarily will include interviews of the Parties and any witnesses who may have relevant information, unless clearly unreasonable or duplicative of information already gathered; a review of any pertinent documents, medical records, and communications; and may include other actions deemed appropriate by the Investigator(s). Interviews will not be recorded.

At the initial interview of the Responding Party and/or in writing within three (3) business days of the initial interview, the Responding Party may provide the Investigators with a response to the allegations, the names (and contact information, if known) of any witnesses to the events in question, and any documentation or communications that the Responding Party believes is pertinent to the Reporting Party's allegations. If a revised Notice is sent to the Parties, the Investigator(s) or the Responding Party may request that the Responding Party be interviewed in relation to the new allegations and/or the Responding Party may provide the Investigator(s) with a response to the new allegations, the names (and contact information, if known) of any witnesses to the events in question, and any documentation

or communications that the Responding Party believes is pertinent to the Reporting Party's new allegations.

If a Party or witness declines to participate in the Investigation and the College is aware of relevant information pertaining to or in the knowledge of that Party, the Title IX Coordinator may present this information to the Investigator.

The Title IX Coordinator, Deputy and/or Investigator(s) shall make every effort to keep the Investigation confidential, although confidentiality cannot be guaranteed. During the Investigation, the Title IX Coordinator, Deputy and Investigator(s) are not permitted to discuss the investigation with anyone except as circumstances warrant on a need-to-know basis. The Investigator(s) may communicate with legal counsel to the College and the Title IX Coordinator or Deputy during the Investigation.

The College will maintain the privacy of all Parties to a complaint under these Procedures, except when it interferes with the College's obligations (1) to fully investigate allegations of violation of the Policy or (2) to notify applicable governmental agencies as may be required by law. Where privacy may not be strictly kept, it will still be tightly controlled on a need-to-know basis and maintained to the extent possible. Breach of confidentiality by the Investigator(s) will result in a permanent removal from the Investigation and may subject the Investigator(s) to disciplinary action.

### v. Prior Sexual History of a Reporting Party Will Not Be Considered Unless Relevant to Consent between the Parties

In general, a Reporting Party's prior sexual history is not relevant and will not be considered by the Investigator(s). Where a current or previous dating or sexual relationship is alleged between the Parties, and the Responding Party alleges consent, the prior sexual history between the Parties may be considered by the Investigator(s) as relevant to assess the manner and nature of communications regarding consent between the Parties. The mere allegation of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute consent. Any prior sexual history of the Reporting Party with other individuals is typically not relevant and will not be considered.

### vi. Summary of Investigative Interviews

After each investigative interview, the Investigator(s) shall prepare a written summary of the interview and shall email a copy of the summary of the interview to the Party or witness who was interviewed as soon as practicable after the interview is conducted. The Party or witness will be given two (2) business days from the date upon which the Investigator(s) send the summary of the interview to provide any comments or additional information via email to the Investigator(s).

If the Party or witness does not provide comments or additional information to the Investigator(s) within this time period, the summary of the interview will be included in the Summary of Evidence without comment from the Party or witness. If the Party or witness provides comments or additional information to the Investigator(s) within this time period, the Investigator(s) shall include the comments and additional information in the Summary of Evidence, as defined below, and may, in the Investigator(s)' discretion, conduct another interview of the Party or witness.

### vii. Summary of Evidence

Both Parties will have the opportunity to have notice of, as well as be heard by, the Investigator(s) with regard to any evidence to be considered for or against them.  The opportunity to be heard includes, but is not limited to, the opportunity to respond to information received during the course of the Investigation. Both Parties will have the same access to information to be used and considered during the process, and the same opportunity to present names of relevant witnesses and to identify and provide evidence during the process.

At the conclusion of the Investigation, the Investigator(s) will prepare a written summary of the information gathered, including but not limited to the names of the witnesses interviewed, summaries of the information provided by each Party and each witness, and copies of all documents or physical evidence provided to the Investigator(s) (Summary of Evidence).  The Title IX Coordinator will review the Summary of Evidence for consistency with College policy and practice, and the College's legal counsel will review the Summary of Evidence for legal sufficiency.

After the legal sufficiency review is complete, the Summary of Evidence will be marked "Confidential" and will be emailed concurrently to each Party via their respective College-assigned e-mail accounts. Parties are required to treat the Summary of Evidence as confidential.  Parties may not disseminate the Summary of Evidence, or any part of it, to any other person, except for the Party's advisor and individuals who are consulted to aid in the Party's preparation of a written response or for support through the process.  Providing the Summary of Evidence to any other person is a violation of the College's Policy Against Sexual Misconduct and may result in discipline against the Party.

Advisors are also bound by the obligation to maintain the Summary of Evidence confidentially and not disseminate the Summary of Evidence beyond individuals who are consulted to aid in the Party's preparation of a written response or for support for the Party through the process.  An advisor's failure to maintain confidentially of the Summary of Evidence may be grounds to exclude the advisor from further participation in the Formal Resolution process.

### 1. Parties' Response to Summary of Evidence

All Parties will have five (5) business days after the date the Summary of Evidence is emailed to the Parties to review the Summary of Evidence and all underlying documents. Within those five (5) business days the Parties may submit written comments, additional information in response to, and questions regarding the Summary of Evidence via email to the Title IX Coordinator (Response to Evidence).

If extenuating circumstances warrant an extension, a Party may submit a request for an extension to the Title IX Coordinator via email no later than the original deadline for the Response to Evidence.  Such requests will be evaluated on a case-by-case basis.  The Title IX Coordinator or Deputy shall email the decision regarding the request for extension to both Parties.  If a request for extension is granted to one Party, the other Party will be provided the same amount of additional time to submit their Response to Evidence.

Parties' Response to Evidence should not exceed ten (10) double-spaced pages with a minimum of 12-point font.  Each Party may clarify any fact that the Party believes is inaccurate in the Summary of Evidence; request that additional witnesses be interviewed by the Investigator(s); request that a Party or

witness be interviewed again; and/or provide additional documents.  If a Party requests that an additional witness be interviewed or that a Party or witness be interviewed again, the Party must provide a statement regarding the information known to the Party or witness and explain the relevance of the information to resolution of the Complaint.  If a Party submits documents, the Party must explain the relevance of each document submitted.


## 2.  Impact Statements

Within three (3) business days after the Response to Evidence is due, the Reporting Party and Responding Party shall have the opportunity to submit a written statement to the Title IX Coordinator or Deputy describing the impact of the case on them and/or requested sanctions (Impact Statement).  The Impact Statements will not be provided to the Investigator(s) unless the Responding Party is found responsible for a violation of the Policy.


## 3.  Additional Investigation

Upon receipt of each Party's Response to Evidence or the expiration of the deadline to submit the Response to Evidence, whichever is earlier, the Title IX Coordinator will submit the Parties' Responses to Evidence that were received to the Investigator(s) for consideration. All information submitted by the Parties in response to the Summary of Evidence will be carefully reviewed by the Investigator(s).  The Investigator(s) may conduct additional interviews to the extent reasonable, based on the relevancy and materiality of the statement of information known by a witness.


## 4.  Revised Summary of Evidence

If the Investigator(s) determine that the Summary of Evidence should be revised based on the Parties' Responses to Evidence and any additional investigation that is conducted, the Investigator(s) will prepare a revised Summary of Evidence (Revised Summary of Evidence).  This Revised Summary of Evidence will include, but is not limited to, the names of the Parties and/or witnesses interviewed, summaries of the information provided by each Party and each witness, and copies of all documents or physical evidence provided to the Investigator(s).  The Title IX Coordinator will review the Revised Summary of Evidence for consistency with College policy and practice, and the College's legal counsel will review the Revised Summary of Evidence for legal sufficiency.

After the legal sufficiency review is complete, the Revised Summary of Evidence will be marked "Confidential" and will be emailed concurrently to each Party via their respective College-assigned e-mail accounts.  Parties are required to treat the Revised Summary of Evidence as confidential. Parties may not disseminate the Revised Summary of Evidence, or any part of it, to any other person, except for the Party's advisor and individuals who are consulted to aid in the Party's preparation of a written response or for support through the process.  Providing the Revised Summary of Evidence to any other person is a violation of the College's Policy Against Sexual Misconduct and may result in discipline against the Party.

Advisors are also bound by the obligation to maintain the Revised Summary of Evidence confidentially and not disseminate the Revised Summary of Evidence beyond individuals who are consulted to aid in

the Party's preparation of a written response or for support for the Party through the process. An advisor's failure to maintain confidentially of the Revised Summary of Evidence may be grounds to exclude the advisor from further participation in the Formal Resolution process.

### viii. Outcome and Standard of Proof

In determining whether the alleged conduct constitutes a violation of the Policy, the Investigator(s) will look at the record of the allegations as a whole and the totality of the circumstances based on the information gathered during the Investigation, including but not limited to, the nature of the behavior, the particular facts of the case, the nature of the relationship and interactions between the Parties, and the context in which the alleged conduct occurred. This standard will be applied from the perspective of a reasonable person within the College community.

The standard of proof in all Sexual Misconduct cases initiated under the Policy shall be "preponderance of the evidence" (i.e. that it is more likely than not that the Responding Party is responsible for violation(s) of the Policy).

The Investigator(s) will submit a written decision to the Title IX Coordinator or Deputy, including, but not limited to: (1) a statement of the findings of fact concerning the alleged events, (2) the evidence relied upon in rendering the findings of fact, and (3) a determination of whether the conduct violated the Policy (Outcome). If the Responding Party is found responsible for violation(s) of the Policy, the Investigator(s) will be provided with the Parties' Impact Statements and the Responding Party's disciplinary record and will issue sanctions in writing (Sanctions), as set forth below.

The Title IX Coordinator will review the Outcome and Sanctions for consistency with College policy and practice, and the College's legal counsel will review the Outcome for legal sufficiency. The Title IX Coordinator or Deputy will include in the Outcome a notification of the Parties' right to appeal and the name of the Appeal Officer who has been appointed.

After the legal sufficiency review is complete, the Title IX Coordinator or Deputy will email the Outcome concurrently to each Party via their respective College-assigned e-mail accounts. If the Responding Party is found responsible, the Title IX Coordinator or Deputy will email the Sanctions to the Responding Party. The Reporting Party will be informed of any sanctions to the extent consistent with FERPA and other applicable law. The Student Conduct Officer will implement the Sanctions.

If neither Party submits an appeal within the applicable time limit, the Outcome and Sanctions will become final on the day immediately following the expiration of the time for filing an appeal.

### ix. Sanctions

If the Responding Party is found responsible for a violation of the Policy, the Title IX Coordinator or Deputy will provide the Investigator(s) with the Parties' Impact Statements and a copy of the Responding Party's disciplinary history, which may be considered by the Investigator(s) in determining a sanction(s). Disciplinary records related to instances where the Responding Party has previously been found responsible for Sexual Misconduct are presumed to be relevant by the Investigator(s) to the assignment of a sanction.

Sanctions that may be imposed under this Policy include, but are not limited to, warning, restriction, work sanctions, educational sanctions, mandated assessments, disciplinary probation, housing contract revocation, disciplinary suspension, and expulsion.  Sanctions may be issued individually or a combination of sanctions may be imposed.  In general:

- Any student who is determined to have committed non-consensual sexual intercourse may receive a sanction ranging from suspension to expulsion.

- Any student who is determined to have committed non-consensual sexual contact or any other prohibited form of conduct may receive a sanction ranging from warning to expulsion.

The Investigator(s) may deviate from the range of recommended sanctions, based upon a full consideration of the following factors:

- The Responding Party's prior discipline history;
- How the College has sanctioned similar incidents in the past;
- The nature and violence of the conduct at issue;
- The impact of the conduct on the Reporting Party;
- The impact of the conduct on the community, its members, or its property;
- Whether the Responding Party has accepted responsibility for the Responding Party's actions;
- Whether the Responding Party is reasonably likely to engage in the conduct in the future;
- The need to deter similar conduct by others; and/or
- Any other mitigating or aggravating circumstances, including the College's values.

The Investigator(s), in consultation with the Title IX Coordinator or Deputy, may also consider restorative justice outcomes that, taking into account the safety of the community as a whole, allow a Responding Party to learn about the origins of the Responding Party's behavior, the Responding Party's responsibility for this behavior, and how the Responding Party can change this behavior.

In the course of preparing the Outcome, the Investigator(s) will notify the Title IX Coordinator or Deputy via email if the Investigator(s) have determined that the Responding Party(ies) is responsible for one (1) or more Policy violations.  The Title IX Coordinator or Deputy will then provide the Investigator(s) with the Parties' Impact Statements and the Responding Party(ies)' disciplinary record.

### x. Timeline

The Title IX Coordinator or Deputy will keep the parties informed of the status of the College's resolution of the report throughout the process.  The Investigators will strive to complete the Investigation within twenty to twenty-five (20-25) business days of the Notice of Investigation.  The Investigators will strive to complete the Outcome within ten (10) business days of receipt of Parties' Responses to Evidence.

The Formal Resolution generally shall be completed within sixty (60) days of the Title IX Coordinator's or Deputy's receipt of the initial report of the allegations of Sexual Misconduct.  If the Formal Resolution cannot be completed within sixty (60) days of the initial report, the Reporting Party and Responding

Party(ies) will be notified via email of reasons for delay.

### VIII.  Appeals

#### a.  Appeal Officer

Either Party may appeal the Outcome, including the finding of responsible or not responsible and/or the sanctions, via email to the Title IX Coordinator.  The appeal will be conducted in an impartial manner by an impartial decision-maker (the Appeal Officer).  The Title IX Coordinator will appoint an Appeal Officer from a pool of external appeal officers with specific training and experience in Title IX matters.

#### b.  Conflicts of Interest

A conflict of interest may arise if the Appeal Officer is related to, has a friendship with, or otherwise has had interactions with one of the parties or witnesses that may compromise the fairness or impartiality of the investigation.  In the rare situation in which an actual or perceived conflict of interest arises from the involvement of an Appeal Officer, that conflict must be disclosed to all Parties and any potential or actual conflict must be appropriately addressed.

If a Party has reason to believe that an Appeal Officer for the case has a conflict of interest, the Party should notify the Title IX Coordinator or Deputy immediately via email and provide the reasons why the Party believes there is a conflict of interest.  Likewise, an Appeal Officer must promptly disclose any potential conflict of interest the Appeal Officer might have in a particular case.  The Title IX Coordinator or Deputy will review the information provided and make a determination regarding whether the Appeal Officer should be replaced with another Appeal Officer.

#### c.  Submission of Appeal

##### i.  Time to Submit an Appeal

Appeals must be submitted to the Title IX Coordinator or Deputy via email within five (5) business days of the date the Outcome was sent via email to the Parties.  Upon receipt of an appeal, the Title IX Coordinator or Deputy will send a copy of the appeal to the non-appealing Party within one (1) business day of the Title IX Coordinator or Deputy's receipt of the appeal.  The non-appealing party will have three (3) business days to submit a response to the appeal to the Title IX Coordinator or Deputy.

In the event that an extenuating circumstance may warrant an extension, a request for an extension must be submitted to the Title IX Coordinator via email no later than the original deadline for the Appeal.  Such requests will be evaluated on a case-by-case basis.  The Title IX Coordinator or Deputy shall email the decision regarding the request for extension to both Parties.  If a request for extension is granted to the appealing Party, the non-appealing Party will be provided the same amount of additional time to submit the Response to the Appeal.  Appeals or responses submitted after the deadlines without an extension having been granted by the Title IX Coordinator or Deputy will be denied.

## ii.  Submission of the Appeal to the Appeals Officer

The Title IX Coordinator or Deputy shall email a copy of the Outcome, the appeal and any response to the appeal to the designated Appeal Officer within one (1) business day of the receipt of the response or the date upon which the response was due, whichever is earlier.  The Appeal Officer shall confirm receipt of this information via email to the Title IX Coordinator or Deputy.  The Title IX Coordinator or Deputy will email a copy of the response to the appeal, if any, to the appealing Party.

## d.  Requirements for Appeal and Response to Appeal

The appeal shall consist of a plain, concise, and complete written statement outlining the grounds for appeal, all relevant information to substantiate the basis for the appeal, and appellant's desired outcome.  The appeal shall not exceed 10 double-spaced pages with a minimum 12-point font.  Mere dissatisfaction with the Outcome is not a valid basis for appeal.

Grounds for appeal are limited to the following:

- Specified deviations from the prescribed procedures of the Policy or these Student Procedures that resulted in significant prejudice to the appealing Party. Minor deviations from designated procedures will not form the basis for sustaining an appeal.

- New or significant information that could not reasonably be made available at the time of the original investigation.

- The sanction imposed was not appropriate to the violation for which the Responding Party was found responsible.

A response to an appeal shall consist of a plain, concise, and complete written statement outlining the reasons that the appeals should be denied, all relevant information to substantiate the basis for the response, and non-appealing Party's desired outcome.  The response shall not exceed 10 double-spaced pages with a minimum 12-point font.

If both Parties appeal, each party is permitted to file a response to the other Party's appeal, and both appeals will be considered by the Appeal Officer in one proceeding.

## e.  Exclusion of Improper Information Submitted on Appeal

The Appeal Officer may exclude any information submitted by the appealing or non-appealing Party if it is not relevant or material to one of the specified grounds for appeal.  If the Appeal Officer excludes information submitted on appeal, the Appeal Officer shall state the basis for exclusion of the information in the Appeal Officer's written decision.

**f. Burden of Proof**

In any request for an appeal, the burden of proof lies with the appealing Party, as the original Outcome (and Sanction, if assigned) are presumed to have been decided reasonably and appropriately.

The Appeal Officer shall first consider whether the appeal is timely filed and if so, whether the appeal is based on one or more of the three grounds. If the Appeal Officer determines that the appeal is not timely or is not based on one of the permitted grounds, the appeal will be denied.

An appeal is not an opportunity for the Appeal Officer to substitute the Appeal Officer's own judgment for that of the Investigator(s) merely because the Appeal Officer disagrees with the Outcome, findings and/or Sanctions. Appeal decisions are to be deferential to the original Investigator(s), making changes to the finding only where there is clear error.

**g. Outcome of Appeal**

The Appeal Officer may affirm or alter the Outcome and/or Sanctions, depending on the basis of the requested appeal:

- If the appeal is based on procedural error, the Appeal Officer may return the Formal Complaint to the Investigator(s) with instructions to cure the error, or, in rare cases where the error cannot be cured, the Appeal Officer may ask that a new investigation occur. If a new investigation is ordered, the Title IX Coordinator or Deputy will appoint different Investigator(s) to conduct a new investigation in accordance with these Student Procedures. The new investigation shall be expedited to the maximum extent possible while ensuring that a thorough and complete investigation is conducted.

- In the case of new and relevant information, the Appeal Officer may remand the case to the original Investigator(s) to assess the weight and effect of the new information, conduct any additional investigation as appropriate, and render a revised report after considering the new facts.

- If an appeal is based on an assertion that an imposed Sanction was not appropriate to the violation for which the Responding Party was found responsible, the Appeal Officer may affirm or alter the Sanction.

The Appeal Officer will render a written decision on the appeal (Appeal Decision) and send it to the Title IX Coordinator or Deputy within fifteen (15) business days from the date that the Title IX Coordinator or Deputy submits all of the appeal documents to the Appeal Officer. This time frame may be extended by the Title IX Coordinator or Deputy as necessary to ensure the integrity and completeness of the appeal process. The Title IX Coordinator will notify the Parties if additional time is required to complete the appeal process.

Appeal Decisions are final, unless the case is remanded. If the Appeal Officer remands the case, the Appeal Decision will state whether the Investigator(s) must issue a Revised Summary of Evidence, Outcome and/or Sanction, as appropriate to the findings on appeal. Any additional investigation and revision of the Summary of Evidence, Outcome and/or Sanction should be completed promptly as

practicable. If the case is remanded, a Party may appeal only the portions of the Outcome that were changed on remand.

The Title IX Coordinator will review the Appeal Decision for consistency with College policy and practice, and the College's legal counsel will review the Appeal Decision for legal sufficiency.

After the legal sufficiency review is complete, the Title IX Coordinator or Deputy will email the Appeal Decision concurrently to each Party via their respective College-assigned e-mail accounts.

### h. Sanctions during Appeal

Sanctions will typically be stayed pending the outcome of any appeal process. If a Responding Party is suspended on an interim basis prior to the conclusion of the Investigation and is suspended or expelled as a result of the Investigation, the interim suspension will continue pending the outcome of any appeal.

### IX. Records

These procedures are entirely administrative in nature and are not considered legal proceedings. Parties may not make audio or video recordings of interviews, meetings or any part of the proceedings.

The Title IX Coordinator will retain records of all reports and complaints, regardless of whether the matter is resolved by means of Initial Assessment, Informal Resolution, or Formal Resolution for at least seven (7) years. Complaints resolved by means of Initial Assessment or Informal Resolution are not part of a student's conduct file or academic record or of an employee's personnel record.

If the Responding Party is a student and is found responsible for a violation of the Policy through the Formal Resolution process, the Title IX Coordinator will submit a copy of the Outcome and Sanctions to the Student Conduct Officer to be placed in the student's disciplinary record. Such records shall be used in reviewing any further conduct or issuing sanctions and shall remain a part of a student's conduct record.

Student conduct records will be retained in the Dean of Students Office for seven (7) years from when the student graduates or leaves the College due to death, withdrawal, or academic dismissal. Student conduct records of cases resulting in suspension, expulsion, or organizational deactivation may be retained for longer periods of time or indefinitely at the discretion of the Dean of Students. Further questions about record retention should be directed to the Dean of Students Office.

### X. The Family Education Rights and Privacy Act

The Family Education Rights and Privacy Act (FERPA) is a federal privacy law that concerns student education records. Student conduct records, including student conduct records that are maintained in the course of a Sexual Misconduct proceeding, are education records under FERPA. Generally, FERPA prohibits disclosure of student conduct records, absent a student's consent. There are a number of exceptions, however, that may subject student conduct records to disclosure in the course of or in the aftermath of a Sexual Misconduct investigation:

### a. Disclosure to Victim in Crime of Violence or Non-Forcible Sex Offense

FERPA permits disclosure of the outcome of a student conduct investigation to the victim of a crime of violence or non-forcible sex offense. Where the alleged Sexual Misconduct relates to a crime of violence or a non-forcible sex offense, the College will disclose the outcome of the hearing and any sanctions to the victim, regardless of whether or not the behavior was found to have violated College's Policy against Sexual Misconduct.

### b. Disclosure to Others of Crime of Violence or Non-Forcible Sex Offense

FERPA permits disclosure of the outcome of a student conduct investigation to anyone if (1) the alleged Sexual Misconduct relates to a crime of violence or non-forcible sex offense; (2) the Responding Party was found to have violated this Policy; (3) the alleged instance of Sexual Misconduct occurred after October 7, 1998; and (4) the names of non-party students, such as witnesses, have been redacted.

### c. Transfer Students

FERPA permits disclosure of a student's education records to officials of another institution of postsecondary education where the student seeks or intends to enroll, or where the student is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer.

### d. Disclosure Where the College is a Party in Litigation

FERPA permits disclosure of education records when a student initiates legal action against the College and the education records are relevant to the College's defense.

### e. Subpoenas and Court Orders

FERPA permits disclosure of education records when the party seeking disclosure presents a lawfully issued subpoena or court order. Student conduct records are discoverable in criminal and civil litigation and must be disclosed in their entirety pursuant to a lawfully issued subpoena or court order.

### f. FERPA Right to Inspect and Review

FERPA also gives students a limited right to inspect and review their own education records. Any document or recording maintained in a student conduct proceeding that is directly related to a student is an education record, subject to inspection and review upon request. Practically speaking, if a student who is a Party or witness in a Sexual Misconduct proceeding gives any written or recorded statement, this statement will be made available, to the extent required by law, and to the extent that it relates to any student who invokes the right to inspect and review the student's education records.

### XI.    Conflicts with the Policy and Procedures

With the exception of the College Bylaws, to the extent that the Policy or these Student Procedures conflict with any other College policy, procedure, handbook, faculty or employee bylaw, agreement, or process, the Policy and these Student Procedures shall prevail.

If a Reporting Party alleges Sexual Misconduct along with alleged violations of other College policies and procedures, including but not limited to the Student Code of Conduct, Employee Handbook, Faculty Bylaws or Faculty Handbook, all allegations will be investigated and adjudicated in accordance with the Policy and these Student Procedures.  The Title IX Coordinator or Deputy may pair an investigator without Title IX training with an investigator with Title IX training to investigate allegations that do not fall within the scope of the Policy.

# Exhibit C

The St. Mary's College of Maryland
Anti-Harassment Statement

**Background**

crimination is prohibited by Title IX of the Education Amendments of 1972, a federal law that provides that:

*No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*

harassment is also prohibited under Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act (adopting language of Title VII), applicable law.

ducational community, the College will respond promptly and equitably to reports of sexual misconduct in order to investigate the situation, eliminate any ment, prevent its recurrence, and address its effects on any individual or the community.

**Title IX Coordinator**

llege has designated Michael Dunn to serve as the College's Title IX Coordinator. The Title IX Coordinator oversees the College's response to sexual harassm sconduct to ensure a consistent institutional response that is compliant, coordinated, and compassionate. The Title IX Coordinator can be reached by phone 05), email (titleix@smcm.edu or mkdunn@smcm.edu), or in person in Glendening Hall 254.

**Sexual Misconduct Policy**

llege's policy and grievance procedures on sexual harassment and misconduct provide interim remedies and protective measures for an individual who has tim of sexual harassment or sexual misconduct, prompt and equitable procedures for investigating and resolving a report of sexual misconduct, and tability for an individual who violates the College's prohibitions. Any student or College employee who is found to have committed sexual harassment or duct may face suspension, expulsion, or dismissal from employment.

llege's policies apply to all students, employees, and visitors. Every community member is highly encouraged to familiarize themselves with the policy, the le resources, and the options for reporting and resolving a complaint of sexual harassment or misconduct. The policy is online on the College's website and policy will be made available to you in the Dean of Student's Office and in the Title IX Office.

llege encourages any individual who has experienced any witnessed any type of sexual harassment or sexual misconduct to seek immediate medical and law ement attention *and* to promptly report the incident to the College's Title IX Coordinator. The College cannot take appropriate action unless the College is a report.

**Reporting Options**

llege encourages all individuals to report sexual harassment or misconduct to one of the following reporting options:

| | |
|---|---|
| *Title IX Coordinator* | Michael Dunn | 240-895-4105, mkdunn@smcm.edu |
| *Office of Public Safety* | Sean Kennedy | 240-895-4911, sdkennedy@smcm.edu |
| *Office of Student Conduct* | Kelly Smolinsky | 240-895-3181, kasmolinsky@smcm.edu |
| *Dean of Students* | Leonard Brown | 240-895-4208, lebrown1@smcm.edu |
| *Human Resources (Deputy Title IX Coordinator)* | Catherine Pratson | 240-895-4309, capratson@smcm.edu |
| *Office of Residence Life (Deputy Title IX Coordinator)* | Daniel Schell |240-895-4207, djschell@smcm.edu |

nsible Employees." Under Title IX, a College is required to take immediate and corrective action if a "responsible employee" knew or, in the exercise of able care, should have known about sexual or gender-based harassment that creates a hostile environment. At the College, employees with supervisory and hip responsibilities on campus are considered "responsible employees." This includes all faculty, coaches, administrators, Resident Assistants/Residence Ha nators, and other student employees/volunteers with a significant responsibility for student welfare. With the exception of individuals who have legally pro entiality (see below), all "responsible employees" of the College are required to share with the Title IX Coordinator any report of sexual harassment or misco ceive, or of which they become aware.

ts can also report to the Sexual Misconduct Advocacy and Resource Team (SMART) (301-904-2015), a group of students specially trained in sexual miscond esponse protocols who provide on-call services 24 hours a day, 7 days a week when school is in session. Students may elect to remain anonymous by withho lly identifiable information. All information shared with SMART is reported to the Title IX Coordinator.

**Confidential Resources**

ividual who has experienced or witnessed sexual harassment or misconduct may choose to seek support from trained professionals at the College w ered confidential under the law. These professional resources are:

| | |
|---|---|
| *Staff Therapist/ Advocate* | Rachel Honig |240-895-4289, rhhonig@smcm.edu |
| *Counseling and Psychological Services* | 240-895-4289 |
| *Health Services* | 240-895-4289 |

uals with legally protected confidentiality will not release information to the College without the consent of the victim.